ELIPHALET MILLER and MARY his wife, ISAAC B. MILLER, et al. v. CHARLES FORD, and the Administrators of SYLVANUS BONNELL, deceased.

In a suit in equity, upon a mortgage or other instrument tainted with usury, the defendant may set up the usury, and, if he can prove the facts, may avoid the instrument, according to the letter of the statute.

But when a party goes into court, seeking relief from the operation of an usurious instrument, he must offer to do what equity and good conscience requires at his hands; that is, to pay the sum actually due: and if he omit to make such offer, the defendant may demur.

A. mortgaged five lots of land to B. to secure payment of three thousand seven hundred and fifty dollars, in seven annual instalments. After this, he conveyed the mortgaged premises, and one other lot, to C., *in trust*, to receive and apply the rents and profits, and in case of deficiency to raise money by mortgage, to pay off the incumbrance, and after satisfying that, to pay the net rents and profits to the grantor's daughter M. (wife of E. M.) for her support, until her youngest child attained twenty-one years of age, and then, *in trust*, to convey the premises to M. and her children then living, as tenants in common; upon their paying, or securing, a legacy of one thousand dollars to J. B. F. afterwards mortgaged the trust premises to B. to secure the farther sum of three thousand six hundred and twelve

dollars and ninety cents. Upon the death of B. his administrators filed an original bill against A. and F. for the foreclosure of these mortgages. Upon this bill, after a demurrer overruled, there was a decree, *pro confesso*, and order of reference. Pending the reference, the *cestui que trusts* filed the present bill, against F. and the administrators of B. This bill *charges*, that B. with notice of the trust, fraudulently combined with F. to take the second mortgage, for their joint and equal benefit. That all the money advanced by B. (on this mortgage) was one thousand seven hundred and fifty dollars, of which a great part was misapplied by F. That only four hundred and twenty-five dollars (retained by B. for interest) went to discharge the prior incumbrance; all which was known to B. That by connivance of B. and F., one thousand seven hundred and fifty dollars was included in the mortgage, for money that F. pretended to borrow of himself, as trustee; and that one hundred and twelve dollars and ninety cents was included in the mortgage, over the sum pretended to be loaned: in consequence of which the mortgage was usurious and void. That the present complainants were not made parties to, or acquainted with the proceedings had on the original bill. That the annual value of the premises was one thousand two hundred and seventy-five dollars, which had been received, but not paid over or accounted for by F. The *prayer* of the bill is, that farther proceedings on the original suit may be suspended: that the mortgage from F. to B. may be declared fraudulent and usurious, and be set aside and cancelled; or if any part of the money was borrowed to pay the incumbrance, it may be so applied: and that an account may be taken of the rents and profits, and the same may be appropriated to the extinguishment of the first mortgage, and the balance, if any, paid over to the said M. The bill being verified by affidavit, an order was made, in the nature of an injunction, restraining the complainants from proceeding in the original suit until farther order. The defendants appeared; and to that part of the bill which charges, that the mortgage from F. to B. is usurious, and seeks relief on that head, demurred; upon the ground, that the complainants have not paid into court the amount admitted to have been advanced upon the security of the mortgage, nor offered themselves ready to pay the same. The demurrer allowed.

If the complainants had been brought in as parties defendants to the original bill, they might have set up the defence of usury, and have relied on the letter of the statute. But coming in as complainants, and setting up the defence of usury, the general rule (that they must offer to pay the amount actually due) applies to them.

The complainants in this case were not obliged to tender any precise amount. Part of the money secured by the second mortgage, was properly applied to discharge the interest on the first; thus far the second mortgage is good. If the complainants had offered to pay that amount, with so much more as might appear to be due after the question of fraud is investigated, they would have done what is equitable, and both defences would then have been open to them.

July, 1831.    The complainants' offering to pay the amount supposed to be due, would not
                   have been a waiver of the fraud.

Miller et al.   Where a party is not entitled to relief, he is not entitled to discovery. The
    v.               bill, in this case, is for discovery and relief; the demurrer is to both ; this
Ford et al.         is not too broad : you cannot demur to the discovery unless you also demur
                   to the relief.

              The order to stay proceedings in the former suit, is correct.   This court may
                   control the proceedings of other tribunals, for the purpose of administering
                   more complete justice; it is one of its most valuable powers : it may con-
                   trol its own proceedings to attain the same object.

              Notwithstanding an answer was put in by the administrators of B., some of
                   the most important charges of the bill remaining unanswered; they, being
                   merely representatives, having no personal knowledge of the facts, and
                   therefore not admitting or denying them, the order to stay proceedings was
                   continued.

THE bill in this case states, that about January, 1829, Foster
Day and Nancy Bonnell, administrators of Sylvanus Bonnell,
deceased, exhibited their bill in this court against Charles Ford
and Isaac Beach and Mary his wife, to foreclose the equity of
redemption of and in certain mortgaged premises, consisting of
five lots in the county of Morris.   There were two mortgages on
the property : the first one was given by Isaac Beach and Mary
his wife to said Bonnell, on or about the 10th day of October,
1822, to secure the payment of three thousand seven hundred
and fifty dollars.   Of this sum five hundred dollars was payable
in five years, five hundred dollars in seven years, five hundred
dollars in eight years, five hundred dollars in nine years, five
hundred dollars in ten years, five hundred dollars in eleven years,
and seven hundred and fifty dollars in twelve years from the date
of the bond.   The second mortgage was given by Charles Ford
and wife to the said Sylvanus Bonnell, for the sum of three thou-
sand six hundred and twelve dollars and ninety cents, and was
dated on the 1st of December, 1824.   On the 16th August,
1824, and before the making of the second mortgage, Beach and
wife conveyed the premises covered by the first mortgage, and
one additional tract, to Charles Ford, in fee simple, in trust,
however, among other things to raise money by mortgage or
otherwise.   The second mortgage, so given as aforesaid by
Charles Ford, was upon the premises originally mortgaged, and
also upon the additional tract, so conveyed in trust as aforesaid.

Part of the mortgage money becoming due and remaining unpaid, and Sylvanus Bonnell having departed this life, his administrators filed their bill as above mentioned, for a foreclosure and sale of the mortgaged premises. The defendants filed a demurrer to the bill, which not having been set down for argument, was overruled; and in October, 1829, the bill was taken as confessed, and there was an order, as is usual in cases where the whole of the mortgage money is not due, referring it to a master to take an account. Pending this order of reference, the complainants in this suit filed their bill, setting forth, substantially, the following facts:—That the said Isaac Beach was an aged and infirm man, and having considerable property to dispose of, was desirous to provide for the benefit and support of his daughter Mary, being the wife of Eliphalet Miller, and one of the complainants, in such a manner as to place her support and maintenance beyond the control of her husband, who was insolvent, made the conveyance aforesaid of the said six several lots, to the said Charles Ford, in trust, as follows: that the said Charles Ford should lease out the said premises, or any part thereof, and receive the rents and profits, and after deducting taxes, repairs, insurances and reasonable expenses, should appropriate yearly such sum as might remain, to pay off and discharge the incumbrances then upon the property; and in case the rent should be insufficient to pay off the incumbrances, then in trust to raise by mortgage such sum or sums of money as might be necessary to pay off and remove the same; and afterwards to take and receive the rents, issues and profits, and pay over the same to the said Mary Miller for her support and maintenance: and upon this further trust and confidence, that when the youngest child of the said Mary should arrive to twenty-one years of age, that then the said Charles should convey the said premises to the said Mary Miller and to each and every of her children then living, as tenants in common, upon their paying to Isaac Beach one thousand dollars, or securing it upon bond and mortgage. That Ford took upon himself this trust; and that at this time there were no incumbrances on the property except the mortgage from Beach to Bonnell for three thousand seven hundred and fifty dollars.

46

July, 1831.

Miller et al.
v.
Ford et al.

The bill then further charges, that Sylvanus Bonnell, well knowing of the deed of trust and its conditions, fraudulently combined with Ford to take a mortgage from him on this trust property, for the joint and equal benefit of himself and Ford, and that one half of the money to be secured by the mortgage should belong to and be for the benefit of Ford; that upon this understanding and agreement the said mortgage secondly above mentioned was given by Ford to Bonnell for three thousand six hundred and twelve dollars and ninety cents.

And it further charges, that Ford never did borrow this sum of Bonnell, but that all the money he ever advanced and intended to secure by the mortgage was one thousand seven hundred and fifty dollars; part of which was wrongfully retained by him to answer a certain claim against one Mahlon Bonnell, and other part to answer a certain claim against Eliphalet Miller, both of whom are insolvent. That eight hundred and twenty-four dollars and fifty cents of said sum was paid by said Bonnell to Ford, and by Ford, with the knowledge of Bonnell, paid to Eliphalet Miller, who was at that time insolvent, and appropriated the money to his own use. That no part of the one thousand seven hundred and fifty dollars went to discharge the incumbrance, except four hundred and and twenty-five dollars, which was retained by the said Sylvanus on account of interest; and that all this was known to Bonnell.

And it is further charged, that by the connivance of Bonnell and Ford the trustee, the sum of one thousand seven hundred and fifty dollars is included in the mortgage for money that Ford pretended to borrow of himself as such trustee, no part of which was appropriated to the paying off of the only incumbrance there was on the property. That there was included in the said mortgage one hundred and twelve dollars and ninety cents over and above the sum pretended to be loaned, in consequence of which the said mortgage is usurious and void.

It is also further charged, that the premises were of great value, consisting of a flour mill, saw mill and paper mill, and of the yearly value of one thousand two hundred and seventy-five dollars, which had been annually received by the said Charles Ford; that no part of the same had been received by the said Mary Miller

for her support and maintenance, and that the said Charles Ford refused to give any satisfactory account. That the complainants in this cause were not made parties defendants in the suit brought by the administrators of Bonnell to foreclose and sell the mortgaged premises, and had no knowledge of the suit except from information derived from Charles Ford, who informed them at the same time that he would put a stop to the proceedings, and make a compromise with the administrators of Bonnell; and they supposed it was effected, and knew nothing to the contrary, until they understood that a decree, ordering the bill to be taken as confessed, had been entered. That the said Charles Ford, being inquired of as to the matter, said, that he wanted to get rid of the trust, and would purchase in the property and then manage it as he pleased. And it is further charged that this is in accordance with the fraudulent agreement originally entered into between the said Charles Ford and the said Sylvanus Bonnell; the ultimate object of which was to promote a sale of the property under colour of law, and purchase the same for their joint benefit, to the utter destruction of the complainants' rights, and contrary to equity and good conscience.

The relief prayed for is, that all further proceedings in the original suit may be suspended, and that the indenture of mortgage from Ford to Bonnell may be declared fraudulent and usurious, and that the same may be set aside and delivered up to be cancelled; or if any part of it be actually due, and was borrowed for the purpose of paying off incumbrances, that it be applied to paying off the said first mortgage; and that an account may be taken of the rents and profits accrued since the execution of the deed of trust, and that the same may be appropriated to the extinguishment of the first mortgage, and the balance paid over to the said Mary Miller, &c. &c.

The facts charged in the bill being verified by affidavit in the usual way, an order was issued out of this court in the nature of an injunction, restraining the complainants in the original suit from proceeding therein until the further order of the court.

The defendants have appeared; and to all that part of the bill which charges, that the mortgage given by Charles Ford to Sylvanus Bonnell, was usurious, and therefore void, and seeks relief

July, 1831.

Miller et al.
v.
Ford et al.

because of the alleged usury, they demur, on the ground that the complainants have not paid into court the amount admitted to have been advanced upon the security of the said mortgage, nor have they proffered themselves ready to pay such amount. There was also notice given of a motion to discharge the order staying proceedings in the original suit; the argument of which came on with the demurrer, by

*W. Pennington* and *I. H. Williamson*, for the complainants in the original bill, and defendants in the cross-bill, in support of the demurrer.

*E. Van Arsdale, sen.* for complainants in cross-bill.

Cases cited:—1 *Fonb. E.* 25, (*h.*); 2 *Ves. sen.* 489; 2 *Bro. C. R.* 649; 4 *Bro. C. R.* 436; 16 *Ves. jr.* 124; 15 *John. R.* 555; 5 *John. C. R.* 142, 436; 3 *Ves. and B. R.* 14; 2 *Bro. C. R.* 124; *Forrest. Ex. R.* 129; 3 *Merriv. R.* 161; 1 *John. R.* 580; *Eden on Inj.* 16, 89; 1 *Sch. and L.* 115, 142, 310; *Jeremy E.* 503; 2 *Bro. C. R.* 641; *Ca. T. Talb.* 38; 4 *John. C. R.* 125; 2 *John. C. R.* 148.

THE CHANCELLOR. The question is upon the demurrer: is it rightfully taken?

The general doctrine on the subject is this: where a suit in equity is brought upon a mortgage or other instrument tainted with usury, the defendant may set up the usury, and if he can prove the facts, may avoid the instrument, according to the letter of the statute. But where a party goes into a court of equity, seeking relief from the operation and effect of an usurious instrument, he must offer to do what equity and good conscience require at his hands, that is, to pay the sum actually due; and if he omit to make such offer the defendant may demur: 1 *Fonb.* 25. Ld. Hardwicke says, in the case of *Henkle* v. *The Royal Exchange Assurance Company*, 1 *Ves. sen.* 317, that whoever brings a bill in the case of usury, must submit to pay principal and interest due, on which the courts lay hold and will relieve; and he lays down the same principle in exparte *Skip*, 2 *Ves.* 489. Ld. Thurlow lays it down as a universal rule, *Scott* v.

*Nesbitt,* 2 *B. C. C.* 649 ; 2 *Cox,* 183 : and in *Mason* v. *Garden,* 4 *B. C. C.* 436, which was the case of a cross-bill, he says, that the bill calls upon the defendant to give up the security ; it admits the principal due, and therefore ought to offer payment. So Ld. Eldon, in exparte *Scrivener,* 3 *Ves.* and *Beam.* 14, holds the doctrine to be, that at law you must make out the charge of usury, and in equity you cannot come for relief without offering to pay what is really due. " The equity cases," says Ch. Kent, " speak one uniform language ; and I do not know of a case in which relief has ever been afforded to a plaintiff, seeking relief against usury by bill, upon any other terms :" *Fanning* v. *Dunham,* 5 *Johns. C. R.* 122. The same principle is recognized in 1 *Paige C. R.* 429, *Fulton Bank* v. *Beach :* and in *Morgan* v. *Schermerhorn,* 1 *Paige,* 544, it is held that a party who comes to chancery for relief against an usurious contract, must pay or offer to pay the amount actually due, before he will be entitled to an injunction to restrain proceedings at law : and in this court, in the case of *Britton* v. *Lenox,* decided by Ch. Williamson, in January term, 1828, the principle is fully and ably sustained.

Unless, therefore, there is something peculiar in this case, to take it out of the general principle, the demurrer must be allowed. Some things have been urged which deserve attention. And in the first place, it was argued that not only usury, but fraud is charged as against the second mortgage, and that if the complainants were to offer to pay the amount supposed to be due, it would be a waiver of the fraud ; that in truth they are unable to admit any thing due. I apprehend this to be a mistake. The complainant is not obliged to tender any precise amount. It appears that a part of the money secured by the mortgage for the benefit of Bonnell, was actually paid, and properly appropriated to discharge the interest on the first mortgage. Thus far, undoubtedly, the mortgage is good. If, then, the complainants had offered to pay that amount, together with so much more as might appear to be bona fide due after the question of fraud should have been investigated, I should say they had done what was equitable, and that both defences would have been open to them.

But it is said the demurrer is too broad ; it should have been only to the discovery, and not to the relief. I apprehend the law

differently. When a party is not entitled to relief, he is not entitled to a discovery. The ancient practice is stated to have been otherwise, and it was not until the days of Ld. Thurlow that the present practice was established. In *Morgan* v. *Harris*, 2 *Bro. C. C.* 124, that judge says, "you cannot demur to a discovery, unless you demur to the relief: for then you do not demur to the thing required, but you demur to the means by which it is to be obtained." The rule was followed up by him, in *Fry* v. *Penn*, 2 *Bro. C. C.* 280, and *Price* v. *James*, 2 *Bro. C. C.* 319, and also in *Watkins* v. *Bush*, 2 *Dick*. 663; and has been adhered to in a series of decisions by Ld. Rosslyn and Ld. Eldon, vide *Renison* v. *Ashley*, 2 *Ves. jr.* 459; *Ryves* v. *Ryves*, 3 *Ves*. 343; *Muckleston* v. *Brown*, 6 *Ves*. 63; *Baker* v. *Mellish*, 10 *Ves*. 544; *Attorney General* v. *Brown*, 1 *Swanst*. 294; by Sir Thomas Plumer, vice-chancellor, in the case of *Armitage* v. *Wadsworth*, 1 *Mad. Rep*. 110; and by Sir William Grant, the master of the rolls, in *Jones* v. *Jones*, 3 *Mer*. 161. In the present case, the bill is for discovery and relief. The demurrer is to both; and the objection, that the demurrer is too broad, cannot prevail. The practice is too well settled to be disturbed.

The only difficulty in my mind, on this part of the case, arose from a view of the subject which was not taken in the argument. It is this:—Here was a mortgage upon a trust estate. The bill filed was against the trustee, but not against the cestui que trusts, who were infants and a feme covert, and who are now the complainants before the court. If they had been brought in as parties defendants, they might have set up this defence in their answer, and stood in a very different posture before the court. They might then have rested upon the letter of the statute. But I am not satisfied that their situation was such as to require them to be made parties to the original bill. And coming in as they now do, as complainants, and setting up the defence of usury, I am willing to apply to them the general rule which applies to all other persons coming in a similar way, and asking for similar relief.

I am of opinion that the demurrer is well taken, and must be allowed.

Another question has been raised in this case, on a motion to

vacate the order made in the nature of an injunction, staying further proceedings in the original suit. This order has been termed a novel and unheard of proceeding in this court. Even if it were so, I should have no doubt of its correctness. If this court may control the proceedings of other tribunals, for the purpose of administering more complete justice, (and that is one of its most valuable powers,) I do not see why it may not control its own proceedings, to attain the same object. I believe, however, the principle is not a new one, though perhaps an application of it precisely like to the present, has never before been made. It is not uncommon to stay proceedings on an execution for the sale of mortgaged premises, and that upon motion; and in the case of *Astor* v. *Romayne*, 1 *John. C. R.* 310, the court ordered a sale postponed for six weeks, thereby to give an opportunity for some arrangement, supposing it might be beneficial to all parties. And in the case of *Jesse Baldwin*, complainant, and *Elizabeth Johnston* and *John Y. Baldwin*, defendants, on bill filed in this court, an order very similar to the one in the present case was made in February, 1822, restraining the complainant in a prior suit from proceeding on a certain decree and execution in his favour in this court, until certain matters touching the validity of the mortgage on which the decree and execution was founded, should be properly investigated. That order is still in force, and the second suit having been brought to issue, has been argued before the court, and is now under advisement on its merits.

The propriety of continuing the order, after the answer put in on the part of some of the defendants, is now to be determined. So far as the last mortgage is concerned, I think there can be no doubt as to the propriety of continuing the order. The whole transaction is a very extraordinary one, and calculated to awaken strong suspicion; and this court can never permit the property to be sold to satisfy that mortgage, without an investigation of the facts connected with it. Some of the most important charges remain unanswered. The defendants who have answered, being merely the personal representatives of Bonnell, have no knowledge of them, and therefore can neither admit nor deny them. One charge is, that a large part of the money received by Ford

from Bonnell, was appropriated by Ford in direct violation of the trust, and with the full knowledge of Bonnell, who was perfectly acquainted with the nature of the trust. This is not answered. It will not do to say that if there was any violation of trust, Ford is answerable, and not Bonnell. The charge is, that there was an understanding between them; and such are the circumstances of the case, that in the absence of any denial on the part of the defendants, the complainants should have an opportunity of proving it. The simple fact, that Bonnell consented to take a mortgage on the trust property, from the trustee, for a large amount, with an agreement that half the amount was for the benefit of the trustee himself, without knowing whether the money was actually advanced by the trustee, or how it was appropriated, is sufficient, in my mind, to call for a complete investigation.

I have had some doubt as to the propriety of continuing the order as to the first mortgage. There is much force in the argument, that if Ford has abused his trust, Bonnell should not be answerable, or his estate suffer. But if Bonnell has voluntarily lent himself to any fraudulent schemes of Ford; if he has aided to embarrass the property, and connived at a misappropriation of the very funds that should have been directed to the payment, in part, of his own mortgage, his situation is changed, and he has no reason to complain if he is put to some inconvenience. Seeing the intimate connection that must have subsisted between Ford and Bonnell; seeing that the equity of the bill is not fully answered, even as it regards this first mortgage; and seeing also that Ford, the trustee, has not answered the bill, I deem it advisable to continue the order generally, for the present. Independently of this, the property is an entire property, and cannot be sold in parcels. If a sale takes place, the whole must be sold, and the rights of those ultimately interested in the property may be materially injured.

This course is taken, in the confidence that no unnecessary delay will take place in the prosecution of the suit. The whole case will be at all times under the control of the court, and it will endeavour to shape its course in such way as most effectually to protect and preserve the interests of all parties concerned.