## In re WORTH et al.

### (District Court, N. D. Iowa, W. D. July 6, 1904.)

### No. 620.

1. BANKRUPTCY—PARTNERSHIP—FIRM OR INDIVIDUAL DEBTS.

Where, a short time before a partnership and its members were adjudged bankrupts, a dissolution was agreed to by which one partner took the property of the firm and assumed its debts, consisting chiefly of notes given to a bank, firm creditors who refused to accept the novation cannot set up the claim that the bank consented to it and became the individual creditor of the purchasing partner, and at the same time repudiate the transaction so far as relates to a transfer of the firm property to such partner which was the consideration for his agreement to assume the debts.

2. SAME—PROVABLE DEBTS—RIGHT OF CREDITORS TO PLEAD USURY.

Under the Iowa statute (Code 1897, § 3041) which makes a usurious contract voidable only to the extent of the usurious interest, as construed by the Supreme Court of the state, the defense of usury can be pleaded only by the borrower, and under such rule, which is controlling upon the federal courts as to Iowa contracts, creditors of a bankrupt cannot set up the defense of usury against the claim of another creditor.

**3. SAME—COSTS OF CONTESTING CLAIM.**

> Where the costs on the contest of a claim grew out of a controversy between creditors, entirely carried on for the purpose of controlling the election of trustee, they will not be allowed from the estate.

In Bankruptcy.    On petition of objecting creditors for review of order of referee allowing claim of R. W. Ady, as receiver of the Sheldon State Bank, in the sum of $9,377.64 against the bankrupt estate of N. F. Worth and Ed. C. Brown, copartners doing business under the name of N. F. Worth.

December 28, 1903, a creditors' petition in bankruptcy was filed against Noah F. Worth and Ed. C. Brown, as copartners doing business at Sheldon, O'Brien county, Iowa, under the firm name of N. F. Worth, and thereunder the copartnership and the individual members thereof were adjudged bankrupt on February 16, 1904. The Sheldon State Bank is a banking corporation, duly organized in April, 1902, under the laws of Iowa, its place of business being at Sheldon, in said O'Brien county. Said bank is the successor of the Sheldon Bank, which was also a corporation organized under the laws of Iowa, located and doing business at said town of Sheldon until April, 1902, when it was reorganized as the Sheldon State Bank, which succeeded to the business and assets of said Sheldon Bank; its officers and managers were the same as those of the Sheldon Bank. Ed. C. Brown, one of the bankrupts, was the president and general manager of the Sheldon Bank, and was cashier and general manager of the Sheldon State Bank from the time of its organization. October 16, 1903, the copartnership of Worth & Brown was dissolved by mutual consent of the parties. Brown retired, and Worth retained the assets and assumed the liabilities of the firm, and continued the business in his own name. November 4, 1903, R. W. Ady, in proper proceedings therefor, was duly appointed as receiver of the Sheldon State Bank by the district court of Iowa in and for O'Brien county, has duly qualified as such, and the assets and property of said Sheldon State Bank have been turned over to him as such receiver. Among the assets or property of said Sheldon State Bank so coming into his custody were three notes, dated July 11, 1903, due January 11, 1904, aggregating $9,377.64, bearing 8 per cent. interest, and signed "N. F. Worth." November 7, 1903, N. F. Worth made to said receiver a chattel mortgage on all of the stock of merchandise that formerly belonged to the copartnership of Worth & Brown, and also assigned to the receiver the accounts due such copartnership, to secure said three notes. March 29, 1904, said receiver filed the said three notes so signed by said N. F. Worth, with an affidavit or proof thereof, against the bankrupt estate of said N. F. Worth, which proof appears to be against N. F. Worth individually, and not against the copartnership of N. F. Worth; but on March 30th an amended proof of said claim was filed against the copartnership of N. F. Worth, and in such proof it is alleged that it is made to conform the proof of the debt to the testimony taken on March 29, 1904, in said bankruptcy proceedings. In these proofs reference is made to the chattel mortgage and assignment of accounts to secure said debt, and the mortgage is attached to such proofs; but the receiver alleges that he surrenders all rights under said chattel mortgage and assignment, so far as the same may or might be held to be a preference over other creditors of said copartnership, and claims only to share equally and ratably with other creditors of said copartnership estate. To this claim of the receiver, Stearns, Shafer & Co., Hart Schaefner & Marx, and Carter & Holmes, creditors of the bankrupt copartnership, filed objections, those now relied upon being (1) that the receiver is not a creditor of said copartnership of N. F. Worth, that its said claim is against either Ed. C. Brown individually or against Noah F. Worth individually, and that the receiver is not entitled to share in any interest that either of said partners may have in the copartnership assets until the copartnership debts are first paid in full, with costs of administration; (2) that the claim is usurious; that large payments of illegal interest have been made thereon which should be applied in the payment of the principal of said debt, and the bank and its receiver held to have incurred the forfeiture provided by the laws of Iowa against usury. Testimony was taken upon these objections, and

at its conclusion the referee held that the objections were not sustained, and allowed the claim against the copartnership estate of N. F. Worth and Ed. C. Brown in the sum of $9,377.64, and the objecting creditors have petitioned for a review of such order of the referee.

Hunter & McCallum and Alden, Latham & Young, for objecting creditors.

W. D. Boies, for receiver of Sheldon State Bank.

REED, District Judge (after stating the facts). The testimony relied upon to show that the claim of the receiver of the Sheldon State Bank is the individual debt of Ed. C. Brown, and not that of the copartnership, is voluminous, and it must suffice to say that a careful consideration of the whole thereof leads to the conclusion that the debt originally was that of the copartnership of N. F. Worth and Ed. C. Brown, and does not show that either this bank, or its predecessor, by reason of the conduct of Mr. Brown as president or cashier or general manager of either, is estopped from establishing or proving said claim against the copartnership estate in bankruptcy.

It is further contended by the objecting creditors, that if it shall be held that the debt owing to the Sheldon State Bank was originally that of the copartnership, then by the transaction of October 16, 1903, between Worth and Brown, above referred to, the copartnership was dissolved, and this debt assumed individually by N. F. Worth; that Brown, as cashier or general manager of the bank, at the time of this transaction assented to the arrangement on behalf of and for the bank, accepted the three notes of Worth individually for its claim against the copartnership, and released the latter therefrom; that these notes are the claim of the receiver now in controversy, and are not, therefore, a proper claim against the copartnership estate. The objecting creditors claim that they never accepted Worth individually as their debtor in lieu of the copartnership, and therefore insist that the claim of the receiver should not be allowed against the partnership estate. If it be true that by this transaction Worth individually became the debtor of the bank, he, by the same transaction, became the owner individually of the assets of the copartnership, for these were the consideration of his assumption of the debts of the copartnership, and such assets would be first liable for his individual debt under section 5 (f) of the bankruptcy act. Act July 1, 1898, c. 541, 30 Stat. 547, 548 [U. S. Comp. St. 1901, p. 3424]. This would give the receiver, as an individual creditor of Worth (and other individual creditors, if there are any), preference over the objecting and other copartnership creditors in what was formerly the copartnership assets. This, of course, would be inequitable as to the copartnership creditors not assenting to the transaction; but such creditors must either affirm or disaffirm the transaction of October 16th as a whole. They will not be permitted to affirm it in so far as it makes Worth individually the debtor of the bank, and thus lessen the copartnership liabilities, and disaffirm or repudiate it in so far as it gives him individually the copartnership assets which were the consideration of his assumption individually of the bank debt. So far as the testimony shows, Brown was not a creditor of the copartnership, and no property of the firm was transferred to him or to the bank by

this transaction which would amount to a preference under the bankruptcy law, made within four months prior to the filing of the petition in bankruptcy, which might be avoided by the trustee. Nor does the transaction appear from the testimony to have been intended to hinder, delay, or defraud creditors; nor was such its effect necessarily, for each of the partners remained liable to the partnership creditors (except as they might assent to the release of Brown), and Worth retained all of the assets and remained liable for the firm's debts. In any event, it would be inequitable to charge Worth individually with the firm's debts, and take from him that which was the consideration for his assumption of such debts. As the receiver surrenders all preferences that he might have under the chattel mortgage and assignment of November 7th, it will be more equitable to hold that the relation of the creditors of the copartnership and of the individual members thereof to the partnership assets are not changed by this transaction of October 16th, and that the proceeds of the assets of the firm and its individual members should be distributed as though such transaction had not taken place.

It is urged with much persistency that the claim of the receiver is tainted with usury; that it should be allowed for only such amount of the principal debt as remains after deducting all interest that has been paid thereon, and the forfeiture provided by the Iowa statute for usurious debts enforced. That interest in excess of the legal rate was paid upon this debt to the bank seems certain, but the amount so paid is not definitely shown by the testimony, nor is it entirely clear that it was paid in pursuance of a contract to pay unlawful interest, which is essential to work a forfeiture, by the lender, of the entire interest. Sexton v. Murdock, 36 Iowa, 516. Laws against usury are penal in their nature, and must be strictly construed. Tiffany v. Bank, 18 Wall. 409, 21 L. Ed. 862; Dickerman v. Day, 31 Iowa, 444, 7 Am. Rep. 156. The notes of the receiver, being Iowa contracts, and payable in Iowa, are to be governed by the laws of that state relating to usury. De Wolff v. Johnson, 10 Wheat. 367, 6 L. Ed. 343; Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301, 29 L. Ed. 559; Missouri Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474; Bigelow v. Burnham, 83 Iowa, 121, 49 N. W. 104, 32 Am. St. Rep. 294. The Code of Iowa (1897) provides that the legal rate of interest is 6 per cent., but parties may contract in writing for a rate not in excess of 8 per cent. (sections 3038, 3040), and (section 3041) "if it shall be ascertained in any action brought on any contract, that a rate of interest has been contracted for, directly or indirectly, greater than is authorized by this chapter, the same shall work a forfeiture of eight cents on the hundred by the year upon the amount of the principal remaining unpaid upon such contract at the time judgment is rendered thereon, and the court shall enter final judgment in favor of the plaintiff and against the defendant for the principal sum so remaining unpaid, without costs" (and in favor of the state for the use of the school fund for the amount of the forfeiture). Under this section the forfeiture there provided can be effected only in an action upon such contract. It is the settled rule in Iowa that under these sections the plea or defense of usury is personal to the borrower, and cannot be interposed by a stranger to the contract. Carmichael v.

Bodfish, 32 Iowa, 418; Green v. Turner, 38 Iowa, 112; Burlington Ass'n v. Heider, 55 Iowa, 424, 5 N. W. 578, 7 N. W. 686; Sullivan Savings Institution v. Copeland, 71 Iowa, 67, 32 N. W. 95; Pardoe v. Iowa Nat. Bank, 106 Iowa, 345, 76 N. W. 800. And a purchaser of premises subject to a mortgage which is usurious cannot interpose the defense of usury to an action to foreclose such mortgage, though he is the only party who will be affected by the judgment and decree of fore-closure. Sullivan Savings Institution v. Copeland, 71 Iowa, 67, 32 N. W. 95. And such is the general rule. Pritchett v. Mitchell, 17 Kan. 355, 22 Am. Rep. 287, and cases cited; Bensley v. Homier, 42 Wis. 631. In Pritchett v. Mitchell, 17 Kan. 355, 22 Am. Rep. 287, the right of a second mortgagee to plead usury in an action to foreclose a prior mortgage was involved. Mr. Justice Brewer, then of the Supreme Court of Kansas, said:

"When the parties to a contract are willing to abide by its terms, why should one not a party thereto be permitted to interfere? If the debts were unsecured, no one would think that the second creditor had the right to interfere. * * * Surely a man ought to have the right to say whether he shall keep his own promise or not. * * * While the law ought to protect the borrower from the clamps of the usurer by permitting him to repudiate all but legal interest, yet, if he feels in honor bound by the peculiar circumstances of his loan to pay a stipulated interest, it would seem as though no stranger to the transaction should be permitted to interfere."

The same rule is announced in De Wolff v. Johnson, 10 Wheat. 367, 6 L. Ed. 343. In Bensley v. Hormier, 42 Wis. 631, the right of a judgment creditor to plead usury as a defense in an action to foreclose a mortgage prior to his judgment lien was involved. In denying such right Ryan, C. J., at page 635, says:

"It is difficult to perceive why the defense given by the statute to the borrower for his protection against oppression, and which he may waive at his pleasure, should be extended to any one but himself and his representatives. * * * On what good reason may a stranger to a usurious agreement be suffered to do what the party in interest may consider as incompatible with honor and integrity? This question has given rise to a wide range of discussion, and the cases have generally held the defense of usury to be personal to the borrower. * * * We have come to the conclusion, after full consideration of the case, that the number and weight of authorities are against the right of the mere creditor."

And he quotes from Tyler on Usury, c. 21, as follows:

"From the authorities it seems to be decided that the policy of the statute of usury is the protection of the borrower against the oppressive exactions of the lender. It is not essential to the promotion of this policy that other persons than the victim of the usury, or persons standing in legal privity with him, should have the benefit of the statute, and hence the rule that the objection of usury cannot be raised by a mere stranger to the usurious transaction. And it is expressly declared that, if the borrower prefers for any reason to abide by his agreement, he will be permitted to do so. * * * Whenever he has waived the benefit which the statute proffers, no one else can make it available in his place. This excludes mere creditors, as has been held in several cases cited by the author."

In some authorities it is held that, where the usurious contract is made absolutely void by statute, it will not support an action in favor of any one, and that any person who may be interested in or affected by the enforcement of such void contract may show its invalidity for the

purpose of protecting his own interests. Of this class is, Lloyd v. Scott, 4 Pet. 205, 7 L. Ed. 833. See, also, Frank v. Morris, 57 Ill. 138, 11 Am. Rep. 4. Under the Iowa statute, however, the usurious contract is not void, but voidable only to the extent of the interest in excess of the legal rate, and as construed by the Supreme Court of that state, the right to interpose such a defense is the privilege of the borrower only, and if he does not avail himself of the privilege so granted the statute is no longer applicable. Carmichael v. Bodfish, 32 Iowa, 418. This construction of the local statute by the highest court of the state is, under the familiar rule, controlling upon the federal courts in such state. The objecting creditors in the present case are in no manner parties or privies to the alleged usurious contract of the Sheldon State Bank, in no manner connected therewith, and cannot therefore be heard to interpose the objection of usury thereto.

It would seem that the legal representatives of the borrower might interpose the objection of usury the same as he might do. Whether or not the trustee in bankruptcy of this estate is such a representative and might interpose such objection for the purpose of preventing the allowance of illegal interest in this claim, need not be determined, for he is not interposing such objection. If he shall be of opinion that the amount of interest paid upon the claim in excess of the legal rate can be definitely established, and that it is for the best interest of the estate to expunge the same from the claim as allowed, he may move before the referee to reconsider the order allowing the claim, for this purpose, and the question may be thus raised and determined.

In the matter of costs, the contest was wholly between creditors of the estate, and, while it is claimed in behalf of the objecting creditors that they were waging it in the interest of the estate, it clearly appears that it was in fact waged for the purpose of controlling the election of the trustee. No reason appears why the estate should bear the cost of such a contest.

The order of the referee allowing the claim will be approved, without prejudice, however, to the right of the trustee to move to reconsider its allowance and expunge therefrom any unlawful interest that may be included therein, if he shall determine to do so, and it is so ordered.