73 N.J. Super. 243 (1962)
179 A.2d 554
JUNE GORRIN, PLAINTIFF,
v.
ROBERT MICHAEL HIGGINS AND DOLORES M. HIGGINS, HIS WIFE, AND UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 22, 1962.
*245 Mr. Harold W. Gorrin, attorney for plaintiff.
Messrs. Feinberg, Dee & Feinberg, attorneys for defendants.
PASHMAN, J.S.C.
This is an action to foreclose a second mortgage which is held by plaintiff June Gorrin. In support of her claim for relief, she alleges that defendants Robert and Dolores Higgins, being indebted to her in the sum of $11,000, executed on March 16, 1959 a bond and second mortgage in said sum, payable on September 16, 1959; that no payments have ever been made on said indebtedness, and that she has been obliged to make certain disbursements and advancements to preserve and protect the security interest which she holds.
Defendants filed an answer on November 15, 1961 denying the material allegations made by plaintiff, and set forth the following affirmative defenses: (1) the alleged indebtedness upon which this action was predicated is tainted with usury; (2) plaintiff is precluded from prevailing in this action by reason of the doctrine of "unclean hands"; and (3) one Irving Gollin and not plaintiff was the real party in interest and therefore the plaintiff lacked the status necessary to maintain this action.
On November 29, 1961, plaintiff moved, pursuant to R.R. 4:58-1 and R.R. 4:58-3, for summary judgment in her favor and against defendants, seeking, inter alia, an adjudication: (1) fixing the amount due on her mortgage; (2) barring and foreclosing defendants' equity of redemption; (3) directing that she be paid the amount due on the mortgage with interest and costs; and (4) ordering that the premises in question be sold according to law to satisfy the amount due to her.
*246 Being satisfied that defendants were entitled to restate their supposedly meritorious defenses with greater particularity and specificity, I carried plaintiff's motion to a later date. Prior to hearing oral argument on the adjourned return date of the plaintiff's motion, defendants filed an amended answer setting forth the following affirmative defenses to plaintiff's right to foreclose the mortgage which she held: (1) defendants borrowed $10,000 for a period of six months, upon which interest in the sum of $1,000 was paid. Thus the mortgage of the plaintiff is tainted with usury and is void and unenforceable in a court of equity; (2) plaintiff is not entitled to any equitable relief since she failed to disclose the lender's true identity and the fact that the transaction was usurious; and (3) plaintiff has failed to join Irving Gollin, the true lender, who is an indispensable party, and, furthermore, plaintiff lacks the status to maintain this action.
It is elementary that a summary judgment should be granted with great caution and only if there is no genuine issue as to any material fact. See Home Owners Construction Co. v. Glen Rock, 34 N.J. 305, 311 (1961); Bouley v. Bradley Beach, 42 N.J. Super. 159, 168 (App. Div. 1956); Evening Journal Ass'n v. MacPhail, 45 N.J. Super. 184 (Law Div. 1957); and R.R. 4:58-3.
After considering the oral argument of counsel, the pleadings, affidavits and briefs filed in this matter, I am of the opinion that plaintiff is entitled, as a matter of law, to foreclose her mortgage. There is absolutely no question that defendant Robert Higgins did, in fact, receive $11,000 from either Irving Gollin or Nicholas Panepinto, attorney for Irving Gollin. Indeed, defendant admits the receipt of $11,000 in paragraph 7, page 2, of his affidavit of December 15, 1961. Furthermore, this fact is substantiated in the two affidavits of Panepinto, dated December 11, 1961 and January 22, 1962. Additionally, defendant admits that he borrowed $10,000, but that he was charged $1,000 in interest; and plaintiff admits that the interest charged, *247 i.e., $1,000 was usurious, and she offers to give defendant full credit for this amount and ask for no further interest or costs.
In reaching the conclusion that plaintiff is entitled to foreclose her mortgage, I am not unmindful of the cases cited by defendant which hold that a court of equity will not enforce a usurious contract or mortgage. See Hudnit v. Nash, 16 N.J. Eq. 550, 559 (E. & A. 1862); Vanderveer v. Holcomb, 17 N.J. Eq. 87, 91 (Ch. 1864), affirmed 17 N.J. Eq. 547, 551 (E. & A. 1866); and Miller v. Ford, 1 N.J. Eq. 358, 364 (Ch. 1831). It is my opinion, however, that a comparison of the applicable language contained in the usury statutes at the time these cases were decided and the language contained in the present usury statute, inexorably leads to the conclusion that usurious mortgages may be presently foreclosed.
The first legislative attempt at regulation and control in the area of usurious transactions occurred in 1797 when the Legislature declared that:
"2. * * * all notes, bills, bonds, mortgages, contracts, covenants, conveyances, and assurances, which shall be made for the payment or delivery of any money, wares, merchandise, goods or chattels, so to be lent, on which a higher interest is reserved or taken than is hereby allowed, shall be utterly void.
3. * * * if any person shall, by way or means of any bargain, agreement * * * take, accept or receive, directly or indirectly, for the loan of, or the forbearing or giving day or payment, for any money, wares * * * above the value of seven dollars for one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time, every person, so offending, shall forfeit the full value of the money, wares, merchandise, goods or chattels so lent, sold, bargained, contracted for, or exchanged; one moiety to the use of the State, and the other to the prosecutor, to be recovered, with costs, by action of debt, or on the case, in any court of record having cognizance thereof." Patterson's Laws of N.J., p. 225 (1800).
See also Laws of N.J., p. 269 (1821); and Revised Statutes of 1847, at page 795.
*248 The Legislature retained the language of the 1797 act until 1864 when the only revision of any consequence was enacted. The severity of the penalty to be visited upon a usurious lender was lessened by the following language in the 1864 amendment:
"1. That in all cases of suits at law or in equity to enforce any note, bill, bond, mortgage, * * * which shall be hereafter made for the payment or delivery of any money, wares, merchandise, goods or chattels lent, and on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or costs of suit, may be recovered and no more, and if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only." Laws of N.J., p. 714 (1864).
The wording of the preceding section is very similar to the wording of its successor section which is found in N.J.S.A. 31:1-3 and which provides as follows:
"In all actions to enforce any * * * mortgage * * * on which a higher rate of interest shall be reserved or taken than was or is allowed by the law of the place where the contract was made or is to be performed, the amount or value actually lent, without interest or costs of the action, may be recovered, and no more. If any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only."
See also 4 Comp. Stat., p. 5705 (1911).
The development and changes in the usury statute having been considered, the Hudnit, Vanderveer and Miller cases, supra, require further discussion at this point. Miller cannot be considered applicable contrary authority to the conclusion reached in the instant matter since the decision in that case was based specifically upon the 1797 statutory language. Thus we find the court stating that "where a suit in equity is brought upon a mortgage or other instrument tainted with usury, the defendant may set up the *249 usury, and if he can prove the facts, may avoid the instrument, according to the letter of the statute." 1 N.J. Eq., at p. 364. (Emphasis added)
Hudnit and Vanderveer present a slightly different problem than the Miller case. Hudnit was decided in 1862 and is seemingly based on a "well settled rule of equity" which prohibited the foreclosing of usurious mortgages. 16 N.J. Eq., at p. 559. (It is interesting to note that this statement was made despite the fact that the 1797 usury statute compelled the conclusion reached by the court.) Two years later in 1864, the same court, in Vanderveer, arrived at the identical conclusion, i.e., that a lender could not enforce a usurious contract in equity, but stated that "the court will give effect to the statute and declare the contract void." 17 N.J. Eq., at p. 91. (Emphasis added)
It is the opinion of this court that neither Hudnit nor Vanderveer presents an obstacle to the result reached herein. Hudnit was decided in 1862 and, like Miller, was written in the shadow of the 1797 usury statute. The dogmatic statement by the court in Hudnit that a "well settled rule of equity" compelled the conclusion that usurious mortgages could not be foreclosed was, and is, an incorrect statement of the law, and I do not feel obliged to follow it. Furthermore, the statement in Vanderveer that "the court will give effect to the statute and declare the contract void," supra, indicates that the court in 1864 was still relying upon the mandate of the 1797 usury statute. In any event, I am of the opinion that the present tenor of the law in New Jersey is diametrically opposed to the conclusions and statements contained in Hudnit, Vanderveer and Miller.
Under the present statutory scheme, the sole penalty imposed upon a lender who charges a usurious interest rate is that he shall forfeit all interest and costs when he seeks to enforce any of his rights arising out of the usurious transaction. The Legislature has not withheld or denied all rights of a usurious lender. Indeed, the failure of the Legislature to withhold or deny the right of foreclosure in *250 cases involving usurious mortgage transactions is particularly significant. This court will not superimpose any additional penalties which were not envisioned or adopted by the explicit terms of a legislative enactment.
Glenn, in his treatise on mortgages, made the following pertinent observation concerning the precise issue which is presently before this court:
"As the function of a mortgage is to secure an obligation, it follows that if the obligation is illegal, so is the mortgage. But usury laws, as we have them, are of two types, quite distinct. One class * * * simply entails a forfeiture of all interest charged over the legal rate. * * *

* * * * * * * *
In jurisdictions where the usury laws simply forfeit the excess interest charged, the result is clear * * * when the mortgagee forecloses by suit in equity, a defense of usury should not result in a dismissal. * * * Hence, to save litigation the foreclosure decree should go to the plaintiff, but only [BAD TEXT] the basis of debt and lawful interest; excess interest previously paid, to be credited as a set off." 1 Glenn on Mortgages, § 46.2, at pp. 300-03 (1943).
I am also of the opinion that the doctrine of unclean hands presents no obstacle to granting the relief requested by the plaintiff in the case sub judice. The consequence of a rigid application of this equitable doctrine would be a remaking for the defendants of the consequences of a bargain which they knowingly and willingly entered into; i.e., the plaintiff being unable to foreclose her mortgage because of unclean hands could not proceed on the bond, see N.J.S. 2A:50-2, and would be relegated to occupying a position of, at best, a general creditor of the borrower. Why should this court come to the aid of a borrower who was a willing party to a usurious contract and give him greater protection than the Legislature specifically provided? How has such a borrower been injured by the lender's alleged unclean hands? Cf. 2 Pomeroy, Equity Jurisprudence (5th ed. Symons 1941), § 399, at p. 99, where the author states:
*251 "The party to a suit, complaining that his opponent is in court with `unclean hands' because of the latter's conduct in the transaction out of which the litigation arose, or with which it is connected, must show that he himself has been injured by such conduct, to justify the application of the principle to the case."
Finally, I feel that this is one case in which the doctrine should be applied flexibly and with regard to the practical ramifications which may result from an otherwise strict application. Cf. Journeymen Barbers, etc., Local 687 v. Pollino, 22 N.J. 389, 401 (1956); White v. White, 16 N.J. 458, 464 (1954); and Medical Fabrics Co. v. D.C. McLintock Co., 12 N.J. Super. 177, 179-80 (App. Div. 1951).
As to the second and third defenses raised by defendants, I find that both of them are without merit. Defendants' assertion that the plaintiff is not the real party in interest and that she was under an obligation to disclose the name of the real party in interest is untenable since they voluntarily and with full knowledge of all of the surrounding facts executed the bond and mortgage in her (plaintiff's) name. Although plaintiff should have disclosed that the mortgage in question was usurious in her moving papers, this defect was cured when plaintiff's counsel, acting for her, admitted that the mortgage which plaintiff held was in fact usurious. Under such circumstances this court will not close its doors to the moving party.
There is no denial by defendants concerning the payment by plaintiff to the Pamrapo Savings and Loan Association, the first mortgagee, of the sum of $462.25 to cover taxes, insurance premiums and payments on said mortgage. The plaintiff was completely justified in making said payments to preserve her security interest. Therefore, this amount is a lien on the premises in question and should be added to the amount of the mortgage debt.
Summary judgment shall be entered in favor of plaintiff and against defendants in the following respects: *252 (1) $10,000 is owing to plaintiff on her second mortgage, plus $462.25, for a total of $10,462.25, without any interest or costs; (2) the lands in question shall be sold according to law to satisfy the amount due to plaintiff; and (3) both defendants shall be forever barred from exercising their equities of redemption after the foreclosure sale.
An appropriate judgment may be presented pursuant to R.R. 4:55-1.