367 F.2d 208
 Adele Speare and George Speare, individually and as co-partners doing business as the Agora Prime Rib Restaurant and the co-partnership of the Agora Prime Rib Restaurant.
Adele SPEARE and George Speare, Debtors in Possession, Appellants,
CONSOLIDATED ASSETS CORPORATION, Appellee-Appellant.
 No. 430.
 Docket 30482.
 United States Court of Appeals Second Circuit.
 Argued May 5, 1966.
 Decided October 4, 1966.
 
 Arthur E. Dienst, New York City, for appellants.
 Sydney Basil Levy, New York City (Aranow, Brodsky, Bohlinger, Einhorn & Dann, New York City, on the brief), for appellee-appellant.
 Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.
 LUMBARD, Chief Judge:
 
 
 1
 This is an appeal from a decision of the Southern District Court, Irving Ben Cooper, J., by Adele Speare, as one of the debtors in possession in an arrangement proceeding, exercising the power of a trustee in bankruptcy to void two mortgage liens held by Consolidated Assets Corporation. The parties agree, as the referee and the district court found, that the mortgage liens in question were tainted with usury. The issues before us are whether or not the principal of the usurious loan is forfeited, and whether, if the principal is not forfeited, legal interest must be paid in a proceeding brought by a debtor in possession exercising the power of a trustee in bankruptcy under Section 70(a) (6), 11 U.S.C. § 110(a) (6). We agree with the referee and the district court that, under New York choice of law which the parties have assumed to be applicable, New Jersey law governs this entire transaction and that the lien is valid only to, but to the extent of, the outstanding principal providing that payment is tendered promptly.
 
 
 2
 On June 13, 1960 George and Adele Speare, New Jersey residents, signed two notes and mortgages in the offices of Consolidated Assets Corporation in Rutherford, New Jersey. The transactions arose out of their need for funds to complete the renovation of a restaurant which they rented from Consolidated in New York City. The mortgages were on land located in Bridgewater, New Jersey. The first note and mortgage was for $43,700, representing $20,000 to be applied to the repairs, $7,200 in accrued rent owing, and $16,500 to discharge a prior mortgage on the New Jersey property, and bore six per cent interest payable quarterly. A second note for $4,370 was given by the Hubbard Operating Co., Inc., a company wholly owned by the Speares, to Consolidated and also secured by a mortgage on the Bridgewater property.
 
 
 3
 In February 1961, the Speares filed a petition for an arrangement under Chapter XI of the Bankruptcy Act and were authorized to act as debtors in possession with the power of trustee under Section 342, 11 U.S.C. § 742. They sought permission first to sell the tract of land free of encumbrances (which would then attach to the proceeds) and then under § 70(a) (6) to void the two mortgage liens held by Consolidated as tainted by usury.
 
 
 4
 The referee held that no consideration was received for the $4,370 note; that the transactions of June 13, 1960 were in fact a single transaction and therefore that the second note was a ten per cent bonus on the original loan; and that the "separate bonus as a condition of the $43,700 loan infects the latter with the poison of usury." No appeal was taken from this conclusion, amply supported as it is by the record. The parties, however, earnestly dispute what consequences should flow from it.
 
 
 5
 The referee, purporting to apply New Jersey law in conformity with New York's conflict of laws rules, voided the $4,370 note and the mortgage, and held that the creditor was entitled to repayment in the amount actually loaned, without interest if tendered by the debtors within 20 days of the order;[1] the mortgage remaining a valid lien to that extent.
 
 
 6
 Upon review, the district court affirmed, but granted the debtor a stay of tender in order to apply to the referee to sell the property and make the tender from the proceeds.[2]
 
 
 7
 On appeal the debtor argues that New York law, which he contends would make the creditor forfeit the principal, should apply to this usurious contract, or that, if New Jersey law is applicable, the principal need not be tendered in order to prevent payment of legal interest. The mortgagee cross-appeals the denial of interest. We conclude that (I.) New Jersey law applies and that (II.) the creditor is not entitled to interest provided appropriate tender of principal is made.
 
 I.
 
 8
 Where the question involves the usurious nature of notes and the consequent obligation to pay interest, we will look to the substantive law of the states. See Missouri K. & T. Trust Co. v. Krumseig, 172 U.S. 351, 355, 358-359, 19 S.Ct. 179, 43 L.Ed. 474 (1899). "Where the contract is plainly usurious the applicable state law must be closely followed as to the legal consequences of the defect. State law may, for instance, distinguish between the right of the debtor to plead usury as a defense in bar of the creditor's claim and his right to void the contract by affirmative action (e. g., in suing for return of a security) which may be subject to the condition of tendering capital and legal interest. Where such distinction is drawn by state law it will be carried over into the bankruptcy law." 3 Collier on Bankruptcy ¶ 63.07 [15] at 1824 (14th ed. 1964); see Matter of Miller, 21 F.Supp. 644 (S.D.N.Y.1937); In re Wilde's Sons, 133 F. 562 (S.D.N.Y.1904), aff'd 144 F. 972 (2 Cir. 1906); In re Worth, 130 F. 927 (D.C.Iowa 1904); also 3 Collier on Bankruptcy ¶ 63.13 (14th ed. 1964).[3]
 
 
 9
 Despite seemingly contrary intimations in Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 161-162, 67 S.Ct. 237, 91 L.Ed. 162 (1964) and by commentators, Hill, The Erie Doctrine in Bankruptcy, 66 Harv.L.Rev. 1013, 1046-47 esp. n. 135 (1953); Moore, Commentary on the U. S. Judicial Code 356 (1949); 4 Collier on Bankruptcy ¶ 70.04 n. 31 at 958-60 (14th ed. 1964), the parties, the referee and the district judge assumed New York choice of law rules to be applicable, and the debtors in possession argue only that the referee misinterpreted the New York law of conflicts in deciding that the substantive law of New Jersey is applicable.
 
 
 10
 Although New York generally follows the rule that the validity of a contract will be governed by the law of the state having the most significant contact with it, Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954), it seems to follow a special rule with regard to usury, applying the law of any state connected with the transaction which will validate it, Hawkins v. Ringel, 231 N.Y.S.2d 476 (Sup.Ct.1962), rev'd on other grounds, 19 A.D.2d 649, 242 N.Y.S.2d 616 (2d Dep't 1963); Crylon Steel Co. v. Globus, 185 F.Supp. 757 (S.D.N.Y.1960); see Fahs v. Martin, 224 F.2d 387 (5 Cir. 1955), to give effect to the parties' apparent intention to enter a lawful contract.
 
 
 11
 Where all of the states connected with the transaction would invalidate a contract as usurious, as here, it would seem doubtful that the "validation rule" would call for the application of the law of the state which is most lenient in penalty, but see Restatement (Second), Conflict of Laws § 334d, comment d (1960), for if this special rule is designed to accommodate the presumed intention of the parties to consummate a lawful contract, inquiry should be made only as to whether or not, under the laws of any related forum, the contract would be held valid.[4] Hawkins v. Ringel, supra, nevertheless holds that the usury law of the forum "having relation with the transaction which is most favorable to the transaction" should be applied. 231 N.Y.S.2d at 478 (emphasis added). Thus if, as the parties assume, New York law would not require tender of principal or legal interest under these circumstances, but see New York Credit Men's Ass'n v. Manufacturers Discount Corp., 186 Misc.2d 756, 60 N.Y.S.2d 2 (Sup.Ct.1945), aff'd mem., 270 App.Div. 838, 61 N.Y.S.2d 375 (1st Dep't), motion for leave to appeal dismissed per curiam, 296 N.Y. 615, 68 N.E.2d 888 (1946), aff'd mem., 298 N.Y. 512, 80 N.E.2d 660 (1948), also Halsey v. Winant, 258 N.Y. 512, 180 N.E. 253 (1932); Krause, The Treatment of Usury in Bankruptcy Proceedings, 29 N.Y.U.L.Rev. 1083, 1087-91 (1954), the New York law of usury would not be applied by its own courts.
 
 
 12
 In any event, we agree with the referee that New Jersey law would apply even under the more general New York rule: that the validity of a contract will be determined by the law of the forum having the most significant contacts with the matter in dispute. Auten v. Auten, supra. Although the purpose of the loan was to furnish funds for renovating the New York premises, and some of the negotiations were allegedly carried on and some of the payments were made in New York, the final terms were not agreed upon until the meeting in New Jersey where the contract was signed, and more than a third of the loan was to pay off the prior mortgage on the land there. Furthermore, it is clear that with the debtors resident in New Jersey and the collateral in that state, the parties could have reasonably expected suit in that state under its laws.
 
 II.
 
 13
 Inasmuch as New Jersey law was properly applied, we now turn to whether or not tender of both principal and legal interest is required.
 
 
 14
 New Jersey holds that if a lender seeks to collect upon a usurious contract, he can recover only principal and not any interest. Ferdon v. Zarriello Bros. Inc., 87 N.J.Super. 124, 208 A.2d 186 (Law Div.1965); Gorrin v. Higgins, 73 N.J.Super. 243, 179 A.2d 554 (Ch.Div.1962), N.J.S.A. 31:1-3. The lender can, however, keep any legal interest already paid, D'Onofrio v. Galliotto, 118 N.J.Eq. 271, 179 A. 27 (E. & A. 1935); Frankel v. Major, 9 N.J. Misc. 96, 151 A. 471 (Ch.1930); Kohn v. Kelly, 76 N.J.Eq. 132, 79 A. 419 (Ch. 1909), but he must credit against principal any usurious payment already received. Rosenstein v. Rosenstein, 116 N.J.L. 517, 185 A. 368 (E. & A. 1936). If the borrower seeks to recover back money already paid, he can obtain only that part usuriously paid, and the lender can retain the legal interest. Neuscheler v. See, 131 N.J.L. 368, 36 A.2d 753 (1944).
 
 
 15
 Consolidated asserts that when a borrower seeks to avoid a mortgage New Jersey would require him to offer not only to repay the principal received but the legal interest as well. Although many cases say that borrowers acting affirmatively must "tender themselves ready to pay * * * such amount as the court shall find to be the proper amount," Okin v. Broad & Market National Bank, 92 N.J.Eq. 445, 113 A. 139, 141 (E. & A. 1921); Miller v. Ford, 1 N.J.Eq. 358 (Ch.1831), whether that includes interest has rarely been at issue. In Hudnit v. Nash, 16 N.J.Eq. 550 (E. & A. 1862) the decree awarded legal interest because the borrower failed to tender any amount due; and in Giveans v. McMurtry, 16 N.J.Eq. 468, 473 (Ch. 1864) dictum declares that interest would have to be tendered. We do not think it likely, however, that New Jersey would make the liability for interest turn on whether it was the creditor or the debtor seeking relief. The present N.J.S. § 31:1-4, N.J.S.A., first adopted in 1877 after the Hudnit and Giveans cases, supra, provides that in a suit by the borrower, if "more than lawful interest was taken or reserved the lender shall be obliged to accept his principal money * * * without any interest or other consideration, and to pay costs." No reason has been suggested to us why New Jersey would burden the borrower with paying interest if he seeks to avoid a usurious loan when it would not do so if he merely waited for the creditor to try and collect it, and, a fortiori, no apparent justification exists where such a rule might penalize a trustee seeking to clear up an estate. It does not appear from the record whether any of the quarterly interest was paid by the Speares, but if it were it would not be recoverable. Neuscheler v. See, supra. We therefore agree with the decision of the district court that no interest is due or need be tendered.
 
 
 16
 As to the amount of principal due, the referee held that New Jersey would require tender of payment to the creditor before relief could be granted. Okin v. Broad & Market National Bank, supra. He found the record ambiguous on whether or not a prior tender was made but held that a court of equity would allow subsequent tender, which certainly seems appropriate here where the plaintiffs claimed New York law would forfeit the entire amount so that nothing was due. See Miller v. Ford, supra. He therefore ordered that plaintiffs tender to the creditors the principal still outstanding within 20 days, or else "interest" would be due. We interpret "interest" to mean, as the district court apparently did, the unpaid legal interest commencing from date of the loan. This is consonant with the theory that affirmative relief (the cancellation of the legal interest in this case) should be given only after proper tender. See Hudnit v. Nash, supra.
 
 
 17
 Judge Cooper thought that it would be appropriate for the bankruptcy referee to allow payment to be made only after the land was sold, the lien attaching to the proceeds in the interim, and therefore modified the order suspending the 20-day period if the trustee so applied to the referee and allowing the tender to be delayed until after the sale if the referee approved. We think this is proper in light of the powers of the bankruptcy court to control distribution of claims and to delay or subordinate payments as seems equitable. In re Lico Mfg. Co., 201 F.Supp. 899 (D.C. Conn.1961), aff'd sub nom. Cohn v. Lico Mfg. Co., 323 F.2d 871 (2 Cir. 1963). Although the creditor is deprived of the use of his principal during the delay, Consolidated has had the benefit of it in the renovations to its property under lease to the Speares, and it is certainly less harsh than the complete forfeiture which might have resulted had the New York law of usury governed.
 
 
 18
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Time of payment has been stayed pending review in the district court and on appeal here
 
 
 [2]
 Part of the tract of land was condemned by New Jersey and the funds have already been paid into the court
 
 
 [3]
 We in no way mean to imply a limitation on a bankruptcy court's power to control the order of priorities and distribution of state created obligations. Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 67 S.Ct. 237 (1946); In re Lico Mfg. Co., 201 F.Supp. 899 (D.C.Conn. 1961), aff'd sub nom. Cohn v. Lico Mfg. Co., 323 F.2d 871 (2 Cir. 1963); Hill, The Erie Doctrine in Bankruptcy, 66 Harv.L.Rev. 1013 (1953)
 
 
 [4]
 Compare Ehrenzweig, Contracts in the Conflict of Laws: Validity, 59 Colum.L. Rev. 973, (994) "It is * * * true that `the different pertinent laws may attach different consequences to parts of the agreement in litigation, though none of these laws invalidates them' but the Rule of Validation has never been extended beyond questions of validity."