WALTER E. HELLER & COMPANY,
Plaintiff,

v.

CHOPP-WINCRAFT PRINTING SPE-
CIALTIES, INC., Defendant &
Third Party Plaintiff,

v.

ROYAL ZENITH CORPORATION
(Dismissed July 23, 1982), Third
Party Defendant.

No. 82 Civ. 2862(MP).

United States District Court,
S.D. New York.

Sept. 21, 1982.

Sharfman, Shanman, Poret & Siviglia by Alan D. Handler, New York City, for plaintiff.

Hyman R. Friedman, New York City, for defendant and third party plaintiff.

## MEMORANDUM

MILTON POLLACK, District Judge.

Plaintiff moves for summary judgment on its breach of contract action, alleging that defendant has defaulted in its obligation under a lease between the parties to pay rent for equipment. Defendant does not deny the default but argues that the transaction is a loan, not a lease, is usurious, and that even if it is a lease that plaintiff is bound by certain warranties concerning the equipment which defendant claims is faulty. For the reasons stated

1. Defendant sought to implead Royal as a third-party defendant pursuant to Fed.R.Civ.P. 14(a) but this Court denied that motion on July 23, 1982, on the ground that Royal's liability was not derivative of the defendant's.

hereinafter, plaintiff's motion for summary judgment is granted.

Jurisdiction is predicated on diversity, 28 U.S.C. § 1332. Plaintiff, Walter E. Heller & Company ("Heller") is a Delaware corporation maintaining its principal place of business in Illinois. Defendant Chopp-Wincraft Printing Specialties, Inc. ("Chopp-Wincraft") is a New York corporation with its principal place of business in New York.

*Undisputed Facts*

In June of 1979, Chopp-Wincraft, a corporation in the printing business since 1916, agreed to purchase a Royal-Zenith planeta-variant offset press, model 645 and certain attachments from Royal Zenith Corporation ("Royal")[1] at a cost of $1,019,000. This included a base price of $983,000 plus a sales tax of $36,000. Royal and Chopp-Wincraft signed a purchase order with an attached schedule, dated June 4, 1979.

Before any payments were made, Chopp-Wincraft realized and informed Royal that it could not finance the purchase of the press. Plaintiff Heller was contacted by a Granrich Capital Corporation ("Granrich")[2] and asked whether it would be interested in purchasing the press from Royal and leasing it to defendant. Plaintiff decided to become involved and subsequently paid a fee of $88,348.48 to Granrich for its part in arranging the deal.

On October 15, 1979, Chopp-Wincraft signed an Equipment Lease pursuant to which Heller agreed to lease the press to Chopp-Wincraft for a term of 96 months at a monthly rental of $15,374. Heller accepted the lease in Chicago, Illinois "as of April 14, 1980".

The lease, which except for two addenda was a standard form, provides, *inter alia,* that "LESSOR IS NEITHER THE MANUFACTURER OF THE EQUIPMENT NOR THE AGENT OF SUCH MANUFACTURER NOR A SUPPLIER AND LESSOR ITSELF MAKES NO EXPRESS OR IM-

2. Granrich apparently became involved through Sussex Leasing Corporation, which was one of several financing companies approached by Royal in connection with this matter.

PLIED WARRANTIES OR REPRESEN-TATIONS ... CONCERNING THE EQUIPMENT INCLUDING WITHOUT LIMITATION THE QUALITY OR THE CONDITION OF EQUIPMENT ITS PER-FORMANCE ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICU-LAR PURPOSE. In no event shall any defect in or unfitness of the equipment relieve Lessee of the obligation to pay rent or of any other obligation hereunder ...." (¶ 3, emphasis in original). With respect to warranties the lease also provides that "Lessor, without assuming responsibility for compliance by supplier, will request the supplier to authorize Lessee to enforce in Lessee's own name all warranties, agree-ments, or representations, if any, which may be made by the supplier to Lessee." (*Id.*) Paragraph 14 contains an accelera-tion clause of all payments due upon de-fault. Paragraph 20 provides that the "Lease shall be governed by and construed in accordance with the laws of the State of Illinois." The parties also acknowledged "that this Lease is and is intended to be a lease and that the equipment is and at all times remains the sole and exclusive prop-erty of Lessor, and that Lessee shall have no right, title or interest in or thereto but only the right to use the same as herein provided." (¶ 21).

Two addenda dated October 15, 1979, and signed by both parties add a paragraph 25 "Purchase Option" giving the lessee the option to purchase the equipment at the end of the term at a price equal to the then fair market value, not to exceed 30% of the original cost of the equipment, and a para-graph 26, giving the lessor, "as the owner of the Equipment" the right to take depre-ciation deductions and investment tax cred-its.

Also on October 15, 1979, Chopp-Win-craft signed a chattel mortgage security agreement pursuant to which defendant granted plaintiff a security interest in all its equipment.

On January 11, 1979, Jack Winston, the then Secretary-Treasurer of Chopp-Win-

craft, wrote plaintiff an authorization "to pay $90,000 to Royal Zenith Corporation as a Progress Payment on our lease". The letter noted that the balance would be due upon Chopp-Wincraft's acceptance of the equipment. Defendant delivered to plain-tiff a "Certificate of Inspection and Accept-ance" dated March 10, 1980, and certifying that the equipment "is of a size, design, capacity and manufacture acceptable to Lessee for lease under the Lease, is suit-able for Lessee's purposes, is in good work-ing order, repair and condition and has been installed to the satisfaction of Lessee; ... [Lessee] unconditionally accepts the Equipment for all purposes of the Lease, as of the date hereof." Plaintiff paid Roy-al the balance of the purchase price, $893,-000.

Chopp-Wincraft made its payments on the lease for almost two years but as of January 1982 has ceased payment. On March 31, 1982, Heller wrote Chopp-Win-craft advising it of its default and declaring the rent accelerated and due, and also de-manding delivery over of the equipment pursuant to the chattel mortgage security agreement between the parties.

Both plaintiff and defendant have ac-counted for this transaction as a lease in their financial statements and federal in-come tax returns.

*Findings of Law*

1. The Defense of Usury Is Not Available to Defendant

Defendant argues that it is excused from making further payments on the lease be-cause the transaction is a disguised loan and though N.Y. Gen. Oblig. Law § 5–521(1) (McKinney 1978) generally exempts corporations from the protection of the civil usury law, § 5–521(3) permits corporations to raise a defense of criminal usury. Crim-inal usury is set forth in N.Y.Penal Law § 190.40 (McKinney Supp.1981) as the act of knowingly charging "a rate exceeding twenty-five per centum per annum or the equivalent for a longer or shorter period." [3]

3. The subsequent discussion assumes that de-

fendant could establish that plaintiff charged it

■ The Illinois usury statute similarly exempts corporations from its protection. Ill.Ann.Stat. Ch. 74 § 4(1)(a) (Smith-Hurd Supp.1981). Moreover, the Illinois criminal usury law does not apply to loans permitted by the general usury law. Ill.Ann.Stat. Ch. 38, § 39-3 (Smith-Hurd 1977). Thus if Illinois law controls, defendant cannot raise the defense of usury and this Court need not reach the question of whether the transaction was a lease or a disguised loan.

■ In this diversity action, the Court must apply New York's choice of law rules. *Krauss v. Manhattan Life Ins. Co.*, 643 F.2d 98, 100 (2d Cir.1981). Under those rules, the parties' selection of governing law should be honored where the law chosen has some reasonable relationship to the agreement, *see, e.g., Depositors Trust Co. v. Hudson General Corp.*, 485 F. Supp. 1355, 1359 (E.D.N.Y.1980); *Reger v. National Ass'n of Bedding Mfrs. Group Ins. Trust Fund*, 83 Misc. 2d 527, 539, 372 N.Y.S.2d 97, 114 (Sup.Ct. Westchester County 1975), and is not violative of public policy, *see, e.g., Zion v. Kurtz*, 50 N.Y.2d 92, 104, 405 N.E.2d 681, 686, 428 N.Y.S.2d 199, 204 (1980).

■ Here the contract clearly provides that Illinois law shall govern. That choice of law is reasonable since the lessor is an Illinois company, the lease was accepted in Illinois, and payments were to be sent to Illinois. Nor should Illinois' law be deemed violative of public policy, since usury is not a favored defense, particularly in the circumstances here where a corporation rather than a helpless consumer is involved. *See Schneider v. Phelps*, 41 N.Y.2d 238, 244, 359 N.E.2d 1361, 1365, 391 N.Y.S.2d 568, 571–72 (1977) ("The purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation").

■ Even if this Court chose to ignore the selection of Illinois law by the parties, Illinois law would still govern in this case. In determining which state's usury law to apply to a transaction, New York's choice of law is to invoke the "rule of validation". The rule assumes that the parties intend to enter into a valid contract. Thus the forum state chooses the state whose usury statute would sustain the contract in full or else impose the lightest penalty for usury from the set of all states that have a substantial relationship to the contract. *See Speare v. Consolidated Assets Corp.*, 367 F.2d 208 (2d Cir.1966) (the underlying transaction violated the usury laws of New Jersey and New York and New York law required that the forum choose New Jersey law since it was most favorable to the transaction). *See also Wiltsek v. Anglo-American Properties, Inc.*, 277 F.Supp. 78 (S.D.N.Y.1967) ("In considering the defense of usury, the applicable law is the most favorable usury law of a state having a natural and significant connection with the notes"). As noted above, Illinois has a significant connection with the underlying transaction and Illinois law validates the contract, as opposed to New York law, which would defeat the contract.

2. Plaintiff Is Not Bound By Royal's Warranties

■ Defendant argues that even if the transaction is a lease, it need not pay plaintiff as the equipment is faulty. Defendant argues that the clear disclaimer of warranties contained in paragraph 3 of the leasing agreement between the parties is inapplicable because Royal made several warranties to defendant, and plaintiff is bound by Royal's representations because plaintiff and Royal are a "single economic enterprise" as concerns Chopp-Wincraft.

■ The only Illinois and New York cases cited by defendant for this theory of

---

more than 25% in interest. However, the computation submitted by defendant in which it purported to determine that plaintiff was charging an interest of 10.872%, which together with an Investment Credit of $98,300 (10%), a Depreciation Tax Saving of $90,435 (9.2%), and a

Sales Tax Charged on Interest of $2,464.56 (.251%), amounts to a charge of 30.323% for the first year does not appear to rest on a method of computation used by plaintiff. This Court is skeptical that defendant could demonstrate criminal usury.

liability involve holding the assignee of commercial paper liable for breaches of the contract between assignor and obligor because of the assignee's bad faith in taking the assignment. Even assuming that these cases are apposite, defendant makes no allegation of fact to indicate that plaintiff knew the equipment was faulty though there has been ample opportunity for discovery. Further, defendant does not allege any facts indicating that plaintiff, an Illinois corporation, and Royal, a Delaware corporation doing business principally in New York, worked in tandem from the beginning to structure a deal with defendant—i.e. that Heller and Royal acted as one economic enterprise. Defendant has not disputed plaintiff's assertion that the latter was approached not by Royal but an intermediary, Granrich, and presented with the deal from the beginning as a lease from Heller to Chopp-Wincraft. Defendant's bald allegation that plaintiff and Royal planned a loan together from the start is not sufficient to withstand plaintiff's summary judgment motion.

*Conclusion*

Defendant cannot raise the defense of usury since the contract between the parties is governed by Illinois law and a corporation may not raise the defense of usury under that law. The undisputed facts indicate that Heller and Royal did not act as one economic enterprise in structuring this transaction and there is no basis for holding Heller liable for Royal's warranties.

Accordingly, the plaintiff's motion for summary judgment on its claims against, and the counterclaim by, Chopp-Wincraft is granted. The parties should submit papers on the issue of appropriate damages.

SO ORDERED.