**SUPERIOR FUNDING CORP., Plaintiff,**

v.

**BIG APPLE CAPITAL CORP., Albert Benaderet and Jack Ringer, Defendants.**

**No. 88 Civ. 3552 (RWS).**

United States District Court, S.D. New York.

April 11, 1990.

As Amended April 25, 1990.

William Bernstein, New York City, for plaintiff.

Lance R. Frank, Cedarhurst, N.Y., for defendants Big Apple Capital Corp. and Albert Benaderet.

Norman P. Horwitz, New York City, for defendant Jack Ringer.

## OPINION

SWEET, District Judge.

Plaintiff, Superior Funding Corporation ("Superior Funding"), moves for an order granting judgment against defendants Albert Benaderet ("Benaderet") and Jack Ringer ("Ringer"), jointly and severally in the sum of $521,170.97, together with post-judgment interest thereon from October 3, 1989, and the costs of this action. For the reasons set forth below, this motion is granted against Ringer and adjourned against Benaderet pursuant to the automatic stay imposed upon the filing of Benaderet's bankruptcy in the United States Bankruptcy Court of the Southern District of New York.

### Prior Proceedings

In May 1988, Superior Funding brought suit against Big Apple, a New York investment company in the venture capital business, Ringer, and Benaderet. An answer to the complaint was submitted by counsel on behalf of all three defendants. Subsequently new counsel was substituted for Big Apple and Benaderet who did not thereafter interpose an amended answer nor any counterclaims.

The wilful failure of defendants to deliver any documents or papers initially resulted in money sanctions against the defendants, and finally a striking of Big Apple's answer by order and judgment dated June 30, 1989. In September 1989, all defendants were given notice of the settlement of the proposed judgment against Big Apple for $521,170.97 and post-judgment interest thereon—representing the sum owing, interest from May 10, 1988, and attorney's fees incurred—subsequently entered by this court on October 3, 1989. None of the defendants objected to the amount of the judgment or to how that amount was computed. Neither Benaderet or Ringer elected to oppose the calculation. No appeal was taken from the judgment.

On January 23, 1990 the complaint against the individual defendants was tried in a bench trial.

### Facts

During July 1984, Benaderet and Ringer telephoned from New York to Allen Tucker ("Tucker") in New Jersey. Benaderet and Ringer were then the majority shareholders and the directors and executive officers of Big Apple; Tucker was President of Superior, a New Jersey corporation. During that telephone conversation, Benaderet and Ringer told Tucker that Big Apple was interested in borrowing $200,000.00 from Superior as a "bridge loan" to finance the operations of certain companies that Big Apple was shortly going to take public.

A few days later, Tucker, from New Jersey telephoned Benaderet and Ringer in New York and told them that Superior Funding would make that loan for not longer than six months at an interest rate of two percent per month, with security represented by certain stock that Big Apple, as borrower, and Benaderet and Ringer as co-guarantors of payment, offered to provide as collateral security for the repayment of the loan. The parties agreed to the terms of the proposed loan during that telephone conversation. The stock consisted of shares in a number of small public companies controlled by Big Apple, Benaderet and Ringer, or in which they were shareholders. The stock was so-called "letter stock" and, in a number of instances, represented "control stock" and could not be sold except in compliance with certain regulations of the Securities and Exchange Commission.

Big Apple, Benaderet, and Ringer were anxious to close the loan quickly. Superior Funding's New Jersey attorneys, however, were not particularly familiar with this type of secured financing, and thus it was decided that Big Apple's New York attorney would prepare the loan agreement, promissory note and the related loan documents and send them to Superior Funding's New Jersey attorney for a proposed closing of the loan on July 30, 1984 in New Jersey.

Tucker, Superior Funding's attorneys, Benaderet, Ringer, a third director of Big Apple, and Big Apple's attorney were all present at the closing on July 30, 1984 at

the offices of Superior Funding's attorneys in Millburn, New Jersey. All of the loan documents, including the loan agreement and promissory note, were signed and delivered at the closing, and the collateral security was also then and there delivered. Benaderet and Ringer also signed and delivered at the closing their unconditional and continuing guaranty of payment of the loan, in which guaranty they expressly consented in advance, without notice to them, to extension of time and changes in the terms of payment of the note. At the closing Superior Funding also delivered to Big Apple its $200,000.00 check made payable to Big Apple and evidencing the loan made by Superior Funding to that corporate borrower. The loan agreement of July 30, 1984 contained provisions to the effect that the laws of the State of New Jersey governed the loan transaction and that interest would be compounded by adding defaulted interest to principal and computing such interest thereon.

In March 1985, after the due date of the loan had passed without payment, the parties entered into an extension of the loan agreement, extending the maturity of the loan from October 30, 1984 to April 1, 1985 and increasing the interest on the loan from two percent to two and one-half percent per month. That extension agreement also provided that except as so changed, the terms and conditions of the loan agreement, the promissory note, and the guaranty would remain in effect. Also, in March 1985, Benaderet, a co-guarantor, delivered additional collateral security to Superior Funding consisting of his shares and proprietary lease in a cooperative apartment in New York City.

During its approximate nine-year existence as a New Jersey corporation engaged on a small scale in the interstate commercial finance business, Superior Funding had made only two or three loans to New York residents, and Tucker had come to New York about two or three times and visited the borrowers' premises in connection with such loans. At no time did Superior have any office or any employees or any telephone number in New York, and, except for the few incidental contacts with the State described above, Superior Funding had no contact with New York in connection with its lending business. Generally, the loans which Superior made were to borrowers it knew as a result of businesses in which other Tucker companies were involved, primarily the real estate construction and development business. These affiliated real estate companies had never done any such real estate business in the State of New York. Moreover, Superior never solicited any loans; any interested borrowers would contact Superior Funding.

Big Apple did not pay the first monthly interest payment due August 30, 1984 in the sum of $4,000.00, nor any of the successive monthly interest payments. Big Apple also defaulted in paying the loan at its maturity on October 30, 1984. Big Apple was in continuous default; at no time was Big Apple ever current in the payment of interest and principal.

It soon became apparent to Superior Funding that most of the stock which Big Apple had pledged was either worthless or could not be sold because of non-compliance with the rules of the Securities and Exchange Commission governing "letter stock" and "control stock." Benaderet and Ringer pled with Tucker not to sell the pledged stock because they ensured that the stock value would rise. At the request of Benaderet and Ringer, Superior Funding did sell certain stock and applied the proceeds, like the proceeds of a number of the payments made by Big Apple, first to unpaid interest and then, where available, in reduction of principal.

*October Judgment Binding on Ringer and Benaderet*

 The doctrine of *res judicata* requires that a final judgment is binding on the parties and those in privity with them. *Nevada v. U.S.*, 463 U.S. 110, 135, 103 S.Ct. 2906, 2920, 77 L.Ed.2d 509 (1983). The law is well settled that guarantors of payment of a corporate debt, particularly where such guarantors are controlling shareholders, executive officers and directors of that corporation, are parties to and control the lawsuit against the borrower, and had a

full and fair opportunity to contest the granting of the judgment, are in privity with the corporate borrower and therefore bound by a judgment against the corporation. *See, e.g., United States v. Grayson,* 879 F.2d 620, 625 (9th Cir.1989) (collateral estoppel applies to guarantor of corporate debt); 1B J. Moore, *Moore's Federal Practice* ¶ 0.411[1] (tests for collateral estoppel). Benaderet and Ringer meet every fair test necessary to establish privity and are therefore bound by the judgment entered against Big Apple on October 3, 1989.

### Choice of Law

■ As a defense to the judgment entered, Ringer has argued that the loan is usurious and has now become a penalty in violation of New York law. In a diversity action, a court applying New York's choice of law rules will honor the parties' selection of the law that should govern the dispute when the law chosen has a reasonable relationship to the agreement and does not violate public policy.[1] *Walter E. Heller & Co., v. Chopp–Wincraft Printing Specialties, Inc.,* 587 F.Supp. 557, 560 (S.D. N.Y.1982) (citations omitted). The parties here agreed that New Jersey law would govern any disputes arising from the loan agreement and this agreement bears a reasonable relationship to that forum's law.[2] Moreover, New York's "rule of validation" choice of law rule would favor the forum state whose usury statute would most favorably uphold the contract. *Walter Heller,* 587 F.Supp. at 560 (citing *Speare v. Consolidated Assets Corp.,* 367 F.2d 208 (2d Cir.1966) (the underlying transaction violated the usury laws of New Jersey and New York but New York law required that the forum choose New Jersey law as it was most favorable to the transaction)).

### Usury

■ New Jersey law does not permit guarantors of corporate debt the defense of usury. *Selengut v. Ferrara,* 496 A.2d 725, 730, 203 N.J.Super. 249, 258 (N.J.Sup. Ct.App.Div.1985) ("When loans are actually made to a corporation, usury is not a defense by the individual endorsers or guarantors of the corporate obligation.") (citations omitted), *cert. denied,* 508 A.2d 199, 102 N.J. 316 (1985). As stated in *Nation Wide, Inc. v. Scullin,* 256 F.Supp. 929, 932–33 (D.N.J.1966):

> [T]he law in New Jersey is well settled that the courts will not make a different or better bargain for the parties than they have seen fit to make for themselves ... [t]he corporate obligation was fixed and clear; the guaranty, equally so. The legerdemain employed by the parties to accomplish their mutual purposes cannot now be employed to defeat their obligations. The money advanced was on behalf of [the corporate borrower] and was in fact devoted to its corporate use, hence not interdicted as usurious under New Jersey law.

(citations omitted) *See also Tobia v. Shad Riv. Corp.,* 1990 WL 4624 (D.N.J. Jan. 16, 1990) (Guarantors of corporate obligations cannot raise usury as a defense).

Accordingly, judgment will be entered on notice for the amount of $521,170.97 the October 3, 1989 judgment, interest thereon, as well as the costs of this action as against Ringer. In light of the bankruptcy proceeding, the suit is dismissed with respect to Benaderet with leave to reopen

---

1. Benaderet's assertion that the interest rate actually constitutes a penalty in violation of public policy is unpersuasive. Although the sum now owed is formidable, considering that defendants had at one point reduced the amount to $162,740, the size of the award has become a penalty only to the extent it is attributable to defendants' failure to remedy this default or seek appropriate relief earlier.

2. Even assuming there had been no choice of law provision or the one included were considered defective, New Jersey law would still govern the dispute. New Jersey would be the state with a more substantial relationship to this suit. The loan was negotiated and agreed to during an interstate telephone conversation. All of the parties and their respective attorneys attended the closing of the loan in New Jersey, where parties signed and delivered all of the loan documents and the $200,000.00 check evidencing the loan as well as the collateral for the loan. Payments under the promissory note were required to be made, and were made, at Superior Funding's New Jersey Offices.

without filing fee for further proceeding upon the conclusion of the bankruptcy.

It is so ordered.