## COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: October 16, 2020
Date Decided: January 28, 2021

David E. Ross, Esquire
S. Michael Sirkin, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

Geoffrey G. Grivner, Esquire
Kody M. Sparks, Esquire
Buchanan Ingersoll & Rooney PC
919 North Market Street, Suite 990
Wilmington, DE 19801

Michael F. Bonkowski, Esquire
Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801

Louis J. Rizzo, Jr., Esquire
Reger Rizzo & Darnall, LLP
Brandywine Plaza West
1521 Concord Pike, Suite 305
Wilmington, DE 19803

RE: *Swipe Acquisition Corporation v. Peter M. Krauss et al.,*
Civil Action No. 2019-0509-PAF

Dear Counsel:

In an August 25, 2020 Memorandum Opinion (the "Memorandum Opinion"),[1] the court resolved Defendants' motion to dismiss three of the four counts in Plaintiff's complaint. The court requested supplemental briefing on Count IV,

---

[1] Unless otherwise defined herein, defined terms have the same meaning as set forth in the Memorandum Opinion (the "Memorandum Opinion"). As before, for purposes of this opinion concerning the pending motion to dismiss, the term "Defendants" refers to all defendants except Mr. Urbach.

which alleges a violation of the California Corporate Securities Law of 1968 (the "California Securities Act"), colloquially referred to as California's blue sky law. law. Cal. Corp. Code § 25000 *et seq.* This letter reflects my decision on the motion to dismiss Count IV. The following limited history is designed to place Count IV into proper context. For a full factual and legal recitation, the reader is referred to the Memorandum Opinion.

## I.      PROCEDURAL HISTORY

On June 28, 2019, Plaintiff filed a four-count Verified Complaint against Defendants, arising from the sale of PLI Holdings, Inc. to Plaintiff. Count I asserted a breach of contract claim, Count II asserted a claim for indemnification, and Count III asserted a claim for common law fraud. Count IV asserted a claim for violation of the California Securities Act. Compl. ¶¶ 143–48 (citing Cal. Corp. Code §§ 25401, 25501).

On August 14, 2019, Defendants moved to dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted. Following briefing and oral argument, the court issued the Memorandum Opinion, which denied Defendants' Motion to Dismiss Counts I, II, and III, except as to the claims against Defendant Kristen Zeller-Miller in her individual capacity.

The court denied Defendants' motion to dismiss the California Securities Act claim only insofar as it argued that Plaintiff failed to plead damages separate and apart from the breach of contract claim. The court reserved decision on the remainder of the motion as to Count IV and requested supplemental briefing on two issues: (1) whether the choice-of-law provision in the SPA expressly or impliedly effected a waiver of Plaintiff's ability to assert a claim under the California Securities Act and (2) if so, whether the waiver would be contrary to the public policy of California, thus rendering the choice-of-law provision unenforceable.

The parties completed supplemental briefing on October 16, 2020. This letter reflects my decision to deny the motion to dismiss Count IV of the Complaint.

## II.   ANALYSIS

Defendants argue that the choice-of-law provision at Section 9.6 of the SPA requires dismissal of Count IV. Section 9.6 states:

> This Agreement, and all claims or causes of action (whether in contract, tort or statute) that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement), shall be governed by, and enforced in accordance with, the internal laws of the State of Delaware, including its statutes of limitations.

SPA § 9.6.

Defendants contend that Section 9.6 mandates dismissal of Plaintiff's California Securities Act claim because Plaintiff waived its right to assert any California Securities Act claim by agreeing that Delaware law would apply to all claims arising out of the SPA, including statutory claims.

## A.    Choice of Law

"Upholding freedom of contract is a fundamental policy of this state." *Ascension Ins. Hldgs., LLC v. Underwood*, 2015 WL 356002, at \*4 (Del. Ch. Jan. 28, 2015). That contractual freedom also extends to selecting the law that governs the parties' relationship, which is codified by statute:

> The parties to any contract, agreement or other undertaking . . . may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflict of laws, or that the laws of this State shall govern, in whole or in part, any or all of their rights, remedies, liabilities, powers and duties . . . .

6 *Del. C.* § 2708. "At its core, Section 2708 is intended to provide certainty to parties who are subject to jurisdiction in Delaware that their choice of Delaware law governing the construction and enforceability of their contracts will be respected." *FdG Logistics LLC v. A&R Logistics Hldgs, Inc.*, 131 A.3d 842, 855 (Del. Ch.), *aff'd*, 148 A.3d 1171 (Del. 2016).

On its face, Section 9.6 of the SPA could reasonably be construed to waive the right to assert any non-Delaware law claims relating to the SPA, which would

include California statutory law.  Accepting that Section 9.6 purports to waive any claim under the California Securities Act, however, does not end the inquiry.

Delaware law is "generally supportive of choice-of-law provisions." *Ascension*, 2015 WL 356002, at \*2.  Sometimes, however, the state law that would apply in the absence of a choice-of-law provision enshrines a particularly strong public policy interest, to the point that the state has determined that "contract[ing] around that public policy would be an unwholesome exercise of freedom of contract."  *Id.*  Under those circumstances, Delaware law recognizes a narrow exception to the enforceability of choice-of-law provisions.  A choice-of-law provision is unenforceable if its enforcement would be "'contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.'"  *Id.* at \*2 n.8 (quoting Restatement (Second) of Conflict of Laws § 187 (1971)); *see also Wind Point P'rs VII-A, L.P. v. Insight Equity A.P. X Co., LLC*, 2020 WL 5054791, at \*\*19–21 (Del. Super. Aug. 17, 2020) (applying Section 187 of the Restatement (Second) of Conflict of Laws, and holding Texas securities act claim was not

precluded by a Delaware choice-of-law provision).[2] It is therefore necessary to determine whether California public policy prohibits waiver of claims under the California Securities Act.

1.       **The Complaint Adequately Pleads that California's Securities Law Applies to the Transaction in the Absence of the Choice-of-Law Provision.**

As an initial matter, absent the choice-of-law provision, the Complaint adequately pleads a California Securities Act claim arising out of the SPA.[3] Under the California Securities Act, "[i]t is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the

---

[2] In full, Section 187(2)(b) of the Restatement (Second) of Conflict of Laws states: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . . . (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

[3] In their opening brief, Defendants' only substantive argument in support of dismissal of Count IV was the failure to allege damages. The Memorandum Opinion concluded that the Complaint adequately alleged damages to support the claim under the California Securities Act. Mem. Op. at 35.

light of the circumstances under which the statements were made, not misleading."

Cal. Corp. Code § 25401.

Plaintiff is physically located in California, and it alleges that the injury to it therefore took place in California. Compl. ¶¶ 16, 115, 145. The Complaint alleges that a key meeting occurred in Southern California on May 10-11, 2018 "to discuss the due diligence that Swipe had performed, to outline the potential terms of the SPA, and to extend the exclusivity period beyond the May 11, 2018 date originally contemplated" without referencing the loss of the First Data Amazon business. *Id.* ¶¶ 44, 68.[4] The record does not reflect that any negotiations took place anywhere else, and drawing all reasonable inferences in favor of Plaintiff (as I must at this stage), it appears that Plaintiff could maintain a California Securities Act claim in the absence of a choice-of-law provision.[5]

---

[4] Defendants argue that Swipe was not formed until May 22, 2018, and so it is not possible that the May 11, 2018 meeting in California could form the basis of Swipe's California Securities Act claim. Swipe alleges, however, that its owners assigned all of its claims to it. *See* Compl. ¶ 14 ("To the extent that any of the claims herein, or any portion thereof, belong to PEA, Platinum Small Cap and its subsidiaries, or PLI, those entities have assigned their claims to Swipe Corp pursuant to a valid Assignment and Assumption Agreement dated June 25, 2019."). Swipe has therefore pleaded facts sufficient to give rise to a reasonable inference that it could assert a California Securities Act claim based (at least in part) on the May 11, 2018 meeting.

[5] The Opinion also concluded that the Complaint stated a claim for common law fraud. Mem. Op. at 24-33.

### 2. Does California's Public Policy Prohibit Waiver of Claims Under the California Securities Act?

California's public policy interest in the application of the California Securities Act is embodied in Section 25701 of the California Corporations Code: "Any condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of [the California Securities Act] or any rule or order hereunder is void." Cal. Corp. Code § 25701.

California courts have applied Section 25701 of the California Corporations Code pursuant to its terms. In *Hall v. Superior Court*, 150 Cal. App. 3d 411 (Cal. Ct. App. 1983), the California Court of Appeal held that "the right of a buyer of securities in California to have California law . . . apply to any future dispute arising out of the transaction is a 'provision' within the meaning of section 25701 which cannot be waived or evaded by stipulation of the parties to a securities transaction." *Id.* at 418. Later cases have modified the rule stated in *Hall* to require that a litigant seeking to enforce a choice-of-law or choice-of-forum clause either show "the foreign forum provides the same or greater rights than California, or the foreign forum will apply California law on the claims at issue." *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 157 (Cal. Ct. App. 2015). In *Verdugo*, the California Court of Appeal reaffirmed *Hall*, but held that "a comparison is necessary to determine whether enforcing a . . . choice-of-law clause would violate California's

public policy embodied in its governing statutes." *Id*. at 157. Under California law,

a party seeking to enforce a choice-of-law clause "bears the burden to show

enforcement ***will not in any way diminish the plaintiff's unwaivable statutory***

***rights***" by "showing the foreign forum provides the same or greater rights than

California." *Id.* (emphasis added).[6]

> ### B. Enforcing Section 9.6 to Preclude the California Securities Act Claim Will Diminish Swipe's Statutory Rights.[7]

Like California, Delaware has its own blue sky law. *See* 6 *Del. C.* § 73-201.[8]

Defendants argue that the Delaware and California Securities Acts are substantively

---

[6] Defendants argue that *Hall* was called into question by a 2010 case from the United States District Court from the District of Massachusetts. Defs.' Supplemental Opening Br. 14 n.7 (citing *Huffington v. T.C. Grp., LLC*, 685 F. Supp. 2d 239, 244 n.6 (D. Mass. 2010). Because *Verdugo* reaffirmed the ruling of *Hall* in 2015, *Verdugo* represents the latest holding by a California court applying California law, and is therefore authoritative on that subject.

[7] Defendants argue that it is Plaintiff's burden to satisfy Section 187(2)(b) of the Restatement (Second) of Conflict of Laws, not Defendants' burden to show that enforcement of the choice-of-law provision will not diminish Plaintiff's rights. Defs' Supp. Reply Br. 5 n.2. I conclude that regardless of which party bears the burden on this motion, the choice-of-law provision did not effect an enforceable waiver of Plaintiff's ability to assert a California Securities Act claim.

[8] Both Delaware and California blue sky laws are state securities laws designed to prevent fraudulent practices in the purchase and sale of securities. *See FdG Logistics LLC v. A&R Logistics Hldgs., Inc.*, 131 A.3d at 852–53 ("The primary purpose of the Delaware Securities Act is to provide a basis for stopping intrastate securities fraud.") (internal quotations omitted); *Cal. Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal. App. 4th 102, 107–08 (Cal. Ct. App. 2001) (discussing the structure of the California Securities Act and stating that the Act "create[s] fraudulent and prohibited practices in the purchase and sale of securities"). It is possible for a transaction to implicate blue sky laws of multiple states,

identical and, therefore, the Delaware choice-of-law provision may be given effect. *See* Defs.' Supplemental Opening Br. 15–17 (citing *Pong v. Am. Capital Hldgs., Inc.*, 2007 WL 657790, at *7 (E.D. Cal. Feb. 28, 2007)).

Merely because Delaware possesses a securities law statute does not mean that Plaintiff is able to assert a claim under that statute. Nor can the parties provide for its application by contract. Under Delaware law, a choice-of-law provision alone is not sufficient to permit transacting parties to apply the Delaware Securities Act to their transaction unless the transaction at issue bears a sufficiently close relationship to Delaware.

This court squarely addressed the issue in *FdG*, 131 A.3d at 852. In *FdG*, the counterclaimant argued that a Delaware choice-of-law provision in a merger agreement permitted claims arising under the Delaware Securities Act. *FdG*, 131 A.3d at 846. Chancellor Bouchard's analysis addressed two competing concepts. First, the court discussed the broad policy favoring freedom of contract embodied in Section 2708.[9] The court then confronted the limited reach of the Delaware

---

and application of Delaware's or California's securities law would not necessarily preclude application of the other state's securities law. *See, e.g.*, *Chrysler Capital Corp. v. Century Power Corp.*, 1992 WL 163006, at *10 (S.D.N.Y. June 24, 1992) (denying a motion to dismiss claims for violations of the securities laws of Arizona, Iowa, and Oregon).

[9] *See FdG*, 131 A.3d at 855 (citing *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1048–49 (Del. Ch. 2006)).

Securities Act, which "only applies where there is a sufficient nexus between Delaware and the transaction at issue." *Id.* at 853 (citing *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *19 (Del. Ch. Dec. 1, 2009)).

Reconciling the two competing interests, the court held that a choice-of-law provision was not sufficient to permit a claim under the Delaware Securities Act unless "a sufficient nexus exists between Delaware and the merger transaction at issue" notwithstanding the language of Section 2708. *FdG*, 131 A.3d at 856. The court reasoned that Section 2708 is not a "mechanism for the wholesale importation of every provision of Delaware statutory law into the commercial relationship of contracting parties" because to do so would risk absurd results. *See id.* at 855 (addressing examples relating to importing Delaware's tax code and corporation law into a merger agreement where they would otherwise not apply). In particular, applying the Delaware Securities Act merely because of the existence of a Delaware choice-of-law provision would "lead to the bizarre result of allowing contractual parties to convert a blue-sky law that was intended to regulate *intrastate* commerce into one that would apply to *interstate* commerce." *Id.* at 846 (emphasis in original). The Delaware Supreme Court summarily affirmed the court's judgment "on the basis of and for the reasons assigned in its well-reasoned decision dated February 23, 2016." 148 A.3d 1171 (Del. 2016) (TABLE).

Section 9.6 of the SPA is a general choice-of-law provision that purports to require the application of Delaware law to all claims related to the transaction. *FdG* teaches that Section 9.6 does not grant Plaintiff the ability to assert a Delaware Securities Act claim unless there is a sufficient nexus to Delaware. Holding otherwise would impermissibly extend the territorial reach of the Delaware Securities Act and render the choice-of-law provision incoherent. *FdG*, 131 A.3d at 856; *see also Wind Point*, 2020 WL 5054791, at *20. Based on the allegations of the Complaint, and setting aside Section 9.6, the only connection that the parties and the transaction have to Delaware is that Swipe and one of the Defendants, AG/PLI Investment, LLC, are incorporated in Delaware. Compl. ¶¶ 16, 31. The Complaint does not allege, and Defendants do not argue, that any negotiation or potentially fraudulent activity occurred in Delaware. Those facts—a choice-of-law provision selecting Delaware law and parties incorporated in Delaware—do not form a sufficient factual nexus to permit application of the Delaware Securities Act. *See FdG*, 131 A.3d at 857 (citing *Eurofins Panlabs, Inc. v. Ricerca Biosciences,* LLC, 2014 WL 2457515, at *18 (Del. Ch. May 30, 2014)). Because Plaintiff cannot assert a Delaware Securities Act claim through the operation of Section 9.6,[10] the Delaware

---

[10] In their opening and reply briefs, Defendants framed their argument as one of Delaware law preempting any claim under the California Securities Act because "all claims or causes of action (whether in contract, tort or statute) that . . . relate to [the SPA] . . . shall be

Securities Act does not offer Plaintiff the same or greater rights than the California

Securities Act so as to effect an enforceable waiver under *Hall*.[11]

Most recently, the Delaware Superior Court, applying the reasoning of *FdG*,

held that a contractual Delaware choice-of-law provision did not constitute waiver

of a foreign state securities law claim. *See Wind Point*, 2020 WL 5054791, at *20

(citing *FdG*, 131 A.3d at 855–56). In *Wind Point*, defendants contended that a

Delaware choice-of-law provision waived the plaintiff's right to assert claims under

the Texas securities law statute at Tex. Rev. Civ. Stat. Ann. art. 581-33 (the "Texas

Securities Act"). Acknowledging Section 2708 and Delaware's policy favoring

enforcement of choice-of-law provisions, the Superior Court denied the motion to

dismiss the Texas Securities Act claim. The court reasoned that enforcing a general

choice-of-law provision to prohibit the assertion of a foreign state's securities law

---

governed by . . . the internal laws of the State of Delaware." *See* Defs.' Corrected Opening Br., Dkt. 41 at 26–27 ("[T]he California Blue Sky Law claim is preempted by Delaware law, and should be dismissed as a matter of law.") (citing SPA § 9.6). To the extent this argument is intended to be distinct from the waiver argument, it is unavailing for the same reasons that that Defendants have not established waiver.

[11] Defendants' supplemental briefing relies on several unpublished California Court of Appeal decisions, including a decision analyzing *FdG*, *Verdugo*, and the anti-waiver provision of the California Securities Act. Under the California Rules of Court, however, those unpublished decisions cannot be cited. Cal. R. Ct. 8.1115(a) (requiring that, except under circumstances not present here, "an opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action"). Accordingly, this decision does not cite or rely on those opinions.

was contrary to the purpose of Section 2708 and would lead to "absurd results," including by causing the Delaware Securities Act to "regulate interstate securities transactions." *Id.* at \*20. The court further noted that the Texas Securities Act (like the California Securities Act) contained a provision prohibiting waivers of compliance with the Texas Securities Act. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33(L).[12] The court in *Wind Point* thus concluded that, because "Texas is the default state," had a "materially greater interest than Delaware, and enforcement of the SPA would be contrary to Texas' public policies," the plaintiff's Texas Securities Act claim survived. *Wind Point*, 2020 WL 5054791, at \*21. I find the *Wind Point* court's reasoning persuasive and reach the same conclusion here.

Defendants argue that *Wind Point* is in conflict with a recent decision of this court that dismissed claims alleging violations of Texas and Colorado securities law

---

[12] Defendants argue that *Wind Point* reached the wrong conclusion because the Texas Court of Appeals has held that the anti-waiver provision in the Texas Securities Act does not bar enforcement of choice-of-law provisions selecting the law of other states. Defs.' Supplemental Reply Br. 10 n.7 (citing *Young v. Valt.X Hldgs., Inc*, 336 S.W.3d 258, 266 (Tex. Ct. App. 2010)); *see also id.* at 263 n.6 & 266 (holding that "the antiwaiver provisions of federal and Texas securities laws do not bar enforcement of the forum-selection cause in this case," and noting the same rationale would apply to any choice-of-law analysis). It does not appear that the defendants in *Wind Point* cited *Young* or any Texas case law in their briefing holding that claims under the Texas Securities Act could be waived through a choice-of-law provision. More important, the Texas Securities Act is not relevant to this action, and Defendants have not cited any analogous precedent in which a California court departed from *Verdugo* in analyzing the enforceability of a foreign choice-of-law provision to a California Securities Act claim. *Verdugo*, 237 Cal. App. 4th at 157.

statutes because of a Delaware choice-of-law provision. *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at \*7–8 (Del. Ch. June 11, 2020). *Anschutz*, however, is distinguishable. Unlike in *Wind Point*, the parties in *Anschutz* did not raise, and the court did not have reason to address, whether the Texas Securities Act's anti-waiver provision barred dismissal of the Texas Securities Act claim. Nor did the parties in *Anschutz* address the application of *FdG* or a foreign state's anti-waiver statute. It is also not apparent from the opinion whether a Delaware Securities Act claim could be maintained under the unique facts of that case.

Defendants cite other cases in which Delaware courts have dismissed claims under other states' statutory laws because of a Delaware choice-of-law provision. These cases are factually and legally distinguishable. In *Change Cap. P'rs Fund I, LLC v. Volt Elec. Sys., LLC*, 2018 WL 1635006, at \*7–8 (Del. Super. Apr. 3, 2018), the Superior Court addressed the effect of a Delaware choice-of-law provision on competing Texas, New York, and Delaware usury laws, not state securities laws. The court was therefore able to rely on case law in which courts had applied the usury laws of other states. *Id.* at \*8 n.33 (citing *Walter E. Heller & Co. v. Chopp-Wincraft Printing Specialties, Inc.*, 587 F. Supp. 557, 560 (S.D.N.Y. 1982), & *Saturn Cap. Corp. v. Dorsey*, 2006 WL 1767602, at \*8 (Tex. Ct. App. June 29, 2006)). Here, *Verdugo*, *Hall*, and the California Securities Act's anti-waiver provision

require a different analysis. Further, in applying the conflict-of-laws analysis, the court observed that the defendant could not even establish Texas or New York as the default state whose law would apply in the absence of a choice-of-law provision. *See id.* at *6–7. Defendants also cite cases in the employment context in which courts have determined that a foreign state did not have a greater interest than Delaware in enforcing a Delaware choice-of-law provision.[13] These cases are distinguishable because application of a Delaware choice-of-law provision in the employment context does not implicate *FdG* and *Wind Point*, which hold that Section 2708 was not designed to independently enable contracting parties to bring a Delaware Securities Act claim where none would otherwise lie. These cases also do not implicate California's specific public policy interest in enforcement of the California Securities Act, as articulated in *Hall* and *Verdugo*.

---

[13] *See* Defs.' Supplemental Opening Br. 8–11 (citing *W.R. Berkley Corp. v. Niemela*, 2019 WL 5457689, at *4 n. 3 (D. Del. Oct. 24, 2019), *Advanced Reimbursement Mgmt., LLC v. Plaisance*, 2019 WL 2502931, at *6 (D. Del. June 17, 2019), and *Sensus USA, Inc. v. Franklin*, 2016 WL 1466488, at *4 (D. Del. Apr. 14, 2016)). Defendants also quote *Total Hldgs. USA, Inc. v. Curran Composites, Inc.*, 999 A.2d 873, 883 (Del. Ch. 2009), to argue that the SPA's connections to California are irrelevant because the "idea that a state's interests are only implicated by physical contacts is outmoded in all sorts of ways." Defs.' Supplemental Opening Br. 10. The quoted section of *Total* discussed Section 2708. *See Total*, 999 A.2d at 884 (quoting 6 *Del. C.* § 2708 and observing that "Delaware courts will generally honor a contractually-designated choice of law provision."). *FdG* and *Wind Point*, however, indicate that Section 2708 has limits to the extent a choice-of-law provision purports to require the application of Delaware's blue sky law.

Defendants' reliance on *Organ v. Byron*, 435 F. Supp. 2d 388 (D. Del. 2006), is similarly unavailing. In *Organ*, the United States Court for the District of Delaware recognized—as *FdG* would later—that a choice-of-law provision alone is not sufficient to permit parties to assert claims under the Delaware Securities Act. *Id*. at 391 ("'The understanding of the parties in a transaction whether it falls within the purview of a particular blue sky law is not determinative of its legal effect'") ((quoting 69A Am.Jur.2d Securities Regulation—State § 18 (2006)). Further, *Organ* dismissed a securities claim under Illinois law only after determining that the "Delaware Securities Law provisions are essentially identical to the Illinois provisions" and that Illinois public policy would not be contravened through application of Delaware law. 435 F. Supp. 2d at 393. Therefore, "not only [did] the Plaintiff have recourse under Delaware law, but the Delaware Securities Law provisions [were] essentially identical to the Illinois provisions Plaintiff [was] using." *Id*. at 393.[14] That is not the case here.

Defendants further argue that "any territorial restrictions in the Delaware Securities Act are irrelevant." Defs.' Supplemental Opening Br. 18 (citing *1-800-*

---

[14] The court ultimately dismissed the complaint because the plaintiff disclaimed any intention of filing an amended complaint to assert a claim under Delaware law. *Organ*, 435 F. Supp. 2d at 393.

*Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500 (Cal. Ct. App. 2010)). Defendants' reliance on *Got Junk* is misplaced. In *Got Junk*, a California franchisee brought claims for wrongful termination of the franchise in California court. The franchise agreement contained a Washington choice-of-law provision. The franchisor was a Delaware corporation headquartered in Vancouver, British Columbia. On appeal, the franchisor insisted on the application of California law, citing to an anti-waiver provision in the California Franchise Relations Act ("CFRA"). The court, observing that the CFRA was adopted to protect individuals from the loss of their investments in franchises, concluded that "California public policy [was] not offended by the franchise agreement's granting the franchisee greater protection than what is mandated by the CFRA." *Id*. at 512. The court also rejected the franchisor's argument that the choice-of-law provision was unenforceable because the Washington franchise statute did not "expressly declare any intent for [the Washington franchise statute] to apply to disputes occurring outside of Washington." *Id*. at 937. The court dispensed with that argument as irrelevant, noting that the parties were free to agree to have their franchise relations governed by Washington law. *Id*. *Got Junk* is inapplicable here because, as explained above, under *FdG*, a Delaware Securities Act claim is unavailable to the

Plaintiff.  Thus, precluding the Plaintiff from asserting a California Securities Act claim by virtue of Section 9.6 would offend California public policy.

**C.    Defendants Have Not Established that Plaintiff's Remaining Claims Provide the Same or Greater Rights Than Its California Securities Act Claim.**

Defendants argue that, even if Plaintiff cannot advance a Delaware Securities Act claim, "California public policy would only be violated . . . where the plaintiff would be left without any remedy."  Defs.' Supplemental Opening Br. 17.  This same argument was rejected in *Verdugo*:  "[T]he question is whether enforcing the forum selection clause would diminish Verdugo's unwaivable rights under the [California statute], not whether [the foreign state's] law provides 'adequate' remedies." *Verdugo*, 237 Cal. App. 4th at 160.  Defendants' argument also ignores that Plaintiff's ability to prevail on its California Securities Act claim would require different elements of proof than Plaintiff's indemnification, breach of contract, and common law fraud claims.  Indeed, the purpose of the California Securities Act is to provide an avenue to obtain damages where reliance cannot be proved.   *Boam v. Trident Fin. Corp.*, 6 Cal. App. 4th 738, 743 (Cal. Ct. App. 1992) (noting that the California Securities Act "was a response to the difficulty of proving common law fraud, by establishing statutory causes of action that dispense with the common law element of actual reliance").  Barring Plaintiff's California Securities Act claim

would thus impermissibly "diminish" Plaintiff's rights, especially in the event that it could prevail on its California Securities Act claim but cannot prevail on its common law fraud claim. Defendants' argument is also illogical: it would render the rule articulated in *Verdugo* moot, because damages available under the California Securities Act would always be—at least in part—duplicative of damages available at common law, and so enforcement of a choice-of-law provision would never "diminish" a plaintiff's rights under California law.[15] Therefore, I am not persuaded that precluding Plaintiff's California Securities Act claim would not "diminish

---

[15] Defendants argue that Plaintiff's rights are not diminished because Plaintiff may advance common law claims in lieu of its California Securities Act claims, but the cases Defendants rely on in support of this argument are distinguishable. *Hatteras Enters. Inc. v. Forsythe Cosmetic Grp. Ltd.*, 2015 WL 13760314, at \*3 (C.D. Cal. Aug. 5, 2015) involved a motion to transfer based upon a forum selection clause. It did not definitively decide whether a choice-of-law provision effected a waiver of the plaintiff's ability to assert its California Securities Act claim. Instead, the court concluded that the plaintiff had not met its burden under federal law to show that venue was proper in California. *Id.* at \*3–4. The court did not hold that the plaintiff could not assert his California Securities Act claim in New York, but rather concluded the plaintiff failed to show that a New York court would be unable to protect the interests of California citizens. *Id.* at 4. The court cited *AJZN, Inc. v. Yu*, 2013 WL 97916, at \*3 (N.D. Cal. Jan. 7, 2013), which was also a decision to transfer venue—in that case, to the United States District Court for the District of Delaware based upon a contractual forum selection clause. Like *Hatteras*, *AJZN* did not hold that a California Securities Act claim could not be asserted in Delaware. Instead, it expressly observed that "a Delaware court might apply California law to AJZN's claims." *Id.* at \*4. *Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) is also distinguishable because it did not concern the California Securities Act: *Richards* compared the remedies available under federal securities laws to those available through English laws.

[Plaintiff's] unwaivable statutory rights" under California law.  *Verdugo*, 237 Cal. App. 4th at 157.

For the foregoing reasons, because California has a materially greater interest in the application of the California Securities Act than Delaware and because its law would apply to part of Plaintiff's allegations of fraud, any waiver by Plaintiff of its right to assert a claim under the California Securities Act would be contrary to California's public policies.  Defendants' motion to dismiss Count IV is **DENIED**.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor